FILED
2014 Apr-18  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

ELECTRONICALLY FILED
3/12/2014 3:25 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | **11-CV-201**<br><br>Date of Filing:<br>03/12/2014 |
|---|---|---|

## GENERAL INFORMATION

### IN THE CIRCUIT OF CALHOUN COUNTY, ALABAMA
### WILLIAM M. WAKEFIELD v. WAKEFIELD'S INC. ET AL

**First Plaintiff:** ☐ Business ☑ Individual ☐ Government ☐ Other

**First Defendant:** ☑ Business ☐ Individual ☐ Government ☐ Other

## NATURE OF SUIT:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonnes
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP-Contempt of Court
☐ CONT-Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND- Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD-Eviction Appeal/Unlawful Detainer
☐ FORJ-Foreign Judgment
☐ FORF-Fruits of Crime Forfeiture
☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB-Protection From Abuse
☐ FELA-Railroad/Seaman (FELA)
☐ RPRO-Real Property
☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP-Workers' Compensation
☑ CVXX-Miscellaneous Circuit Civil Case

**ORIGIN:** F ☑ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER

R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT    _____

**HAS JURY TRIAL BEEN DEMANDED?** ☑ Yes ☐ No

**RELIEF REQUESTED:** ☐ MONETARY AWARD REQUESTED ☑ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:** CAM006    3/12/2014 3:25:40 PM    /s/ ANDREW P. CAMPBELL

**MEDIATION REQUESTED:** ☐ Yes ☑ No ☐ Undecided



ELECTRONICALLY FILED
3/12/2014 3:25 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY ALABAMA

| | |
|---|---|
| **WILLIAM M. WAKEFIELD** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No.:** |
| | ) |
| **WAKEFIELD'S INC., SUSAN WAKEFIELD** | ) |
| **CRINNIAN, THE SUSAN CRINNIAN TRUST,** | ) |
| **and JOHN W. GORDON, AS A NECESSARY** | ) |
| **PARTY,** | ) |
| | ) |
| **Defendants.** | ) |

---

### COMPLAINT FOR DECLARATORY JUDGMENT

---

Plaintiff William M. Wakefield ("Wakefield") hereby files this Complaint for Declaratory Judgment pursuant to *Alabama Rules of Civil Procedure* 7 and 8 as well as Alabama Code § 6–6–220 *et seq.* Mr. Wakefield is the majority shareholder and president of Wakefield's Inc., a company based in Anniston, Alabama. Mr. Wakefield has been repeatedly accused of violating legal duties owed the company and a minority shareholder by his sister, Susan Wakefield Crinnian and the Susan Crinnian Trust, a minority shareholder. Wakefield is entitled to a declaratory judgment affirming that his actions comply with his duties set forth in the Corporate Bylaws and Articles of Incorporation and his fiduciary duties owed to all shareholders, including the Susan Crinnian Trust.

### Parties

1.     Plaintiff Wakefield is an adult resident of Calhoun County, Alabama. Wakefield is the majority shareholder and president of Defendant Wakefield's Inc.

2.     Defendant Wakefield's Inc., (the "Company") is a corporation organized under the laws of Florida with its principal place of business in Anniston, Alabama.  For many years, the Company has successfully operated a chain of stores in Alabama which sell women's and men's apparel and goods at retail.

3.     Defendant Susan Wakefield Crinnian ("Crinnian") is an adult resident of Arizona.

4.     Defendant Susan Crinnian Trust ("Trust") is a trust organized under the laws of a state other than Alabama and is in the state of Arizona.

5.     John W. Gordon is an adult resident citizen of Calhoun County, Alabama.

## Jurisdiction

6.     Venue appropriately lies in this Court pursuant to Ala. Code §§ 6–3–2 and 6–3–7 because the Company's principal place of business is in Calhoun County, Alabama, for many years, and all of the events or omissions giving rise to the claim occurred in Calhoun County.

7.     This Court has jurisdiction over these claims pursuant to Alabama Constitution Article VI, § 142 and Alabama Code § 12–11–30 because the matter in controversy exceeds $10,000.  Plaintiff avers that this justiciable controversy is harming the Corporation and the Court should determine and declare the parties' rights.

## Statement of Facts

8.     The Company was founded many years ago by Martin Wakefield, the father of Plaintiff and Defendant Crinnian.  The Company is a closely-held family business with no active or ready market for Company stock other than that established by its Directors for redemption. The Company is governed by the Corporate Bylaws and Articles of Incorporation attached hereto as Exhibit A.

2

9.     For many years, Plaintiff Wakefield has managed the day-to-day operations of the Company as President and Chief Executive Officer.  Under his management, the Company has been properly managed and has achieved profits for all the shareholders, including the Trust. The Board of the Company has distributed substantial dividends when it has determined that the Company was able to do so.  For many years, the Company paid Defendant Crinnian a salary and provided group health insurance to her even though she performed absolutely no work for the Company.  In 2013, the Company ended this practice for good business reasons.

10.    For many years, Defendant Crinnian has complained on numerous occasions about alleged mismanagement of the Company and attacked Wakefield's management decisions. This carried on through a serious of verbal attacks and criticisms over the years notwithstanding the fact she was receiving substantial dividends from the Company, salary, and benefits even though she was performing no work or labor for the Company.  In contrast to Crinnian's criticism, the Company has been maintained as a stable, profitable business despite the growing competitive disadvantages posed by other local merchants and internet marketing.  Yet Crinnian increasingly has been a destructive force on the Board advocating policies such as a distress sale of the business and attacking other shareholders.  Because of her disruptive behavior and other acts, Crinnian was not reelected to the Board in 2013.

11.    Martin Wakefield had three children, Plaintiff Bill Wakefield, Defendant Susan Wakefield Crinnian, and Nannette Wakefield White.  Martin Wakefield died in 2010.

12.    Of the children, only Wakefield is actively involved in the day-to-day operations of the Company.  Mrs. White worked for many years as a dedicated officer and employee of Wakefield's, commuting daily from Birmingham to Anniston.  For a while, Mrs. White and Mrs. Crinnian received salary and benefits from the Company.  In May 2012, Mrs. White sold her 404

3

shares of Company stock back to the Company. Separate from this, she agreed to continue work as a consultant, driving regularly from Birmingham to Anniston to fulfill her responsibilities. The Company purchased Mrs. White's interest at 50% book value. This redemption increased the value of the Trust's shares. The Trust was offered the opportunity to buy shares at 50% of book value, but declined. In September 2013, Mrs. White resigned from the board of directors.

13.     For many years, at the original direction of Martin Wakefield, the Company has maintained a policy of purchasing shares from shareholders who desired to sell at a price equal to 50% of book value and selling shares at the same price. This policy created a market for any shareholder to sell his or her shares. The Company's policy and Bylaws had developed provisions for preemptive rights, that is, the right to buy an equal amount of shares as the purchasing shareholder and thereby not be diluted in percentage of ownership.

14.     In 2013, 125 shares of Company stock were purchased by John Gordon, a valuable and active member of the Company's board of directors consistent with Company policy. Gordon is a member of management who assists Wakefield in running the day-to-day operations of the Company. Mr. Gordon purchased his shares of company stock for 50% of book value. Mr. Gordon holds the option to buy an additional 125 shares. Mrs. Crinnian opposed the sale of stock to Mr. Gordon. The Board offered Crinnian the opportunity again to purchase her pro-rata amount of shares at 50% of book value. The Trust declined and alleged the Gordon sale was improper and illegal.

15.     Plaintiff Wakefield also gifted one share of stock to his wife, Deborah Ann Wakefield, who has been actively involved in the Company for many years.

4

16.     As of today, Mr. Wakefield owns 965 shares of Company stock, Deborah Ann Wakefield owns 1 share, the Susan Crinnian Trust ("Trust") owns 230 shares, which were gifted to the Trust by Crinnian, and Mr. Gordon owns 125 shares.

17.     On February 26, 2014, attorneys representing Mrs. Crinnian and the Susan Crinnian Trust wrote Mr. Wakefield a lengthy letter, attached hereto at Exhibit B, and accused him of engaging in historical oppressive behavior and violating numerous fiduciary and legal duties he owes to the Company, Crinnian, and the Susan Crinnian Trust as minority shareholders of the Company.  This followed similar accusations by Defendant Crinnian over the years of mismanagement and breach of fiduciary duties.  Mr. Wakefield denies that he has acted wrongfully or has in any way violated the fiduciary rights or reasonable expectations of the Company or its shareholders as defined by the Articles of Incorporation or Corporate Bylaws. However, the continued attacks of the Trust and Crinnian require a determination judicially of the rights of the parties.

### Claim for Declaratory Relief

18.     Under the Alabama Declaratory Judgment Act, any individual interested in a written contract or other writing "may have determined any question of construction or validity arising under the instrument" determined by a declaratory judgment action.  Ala. Code § 6-6-223.

19.     The rights of the various parties to this litigation are governed by the Company's Articles of Incorporation and Corporate Bylaws and Alabama law.  Crinnian has continuously and wrongfully accused Mr. Wakefield of misusing his power as majority shareholder to devalue the value of the entity and deny her expectations as a minority shareholder.  The propriety or impropriety of these actions will be determined by the terms of the Corporate Bylaws, Articles of

Incorporation, and Alabama law.  Among these grievances is the removal of Crinnian from the Board of Directors and the alleged purchase of shares of White, notwithstanding the Company's longstanding policy to purchase and sell shares at 50% of book value.

20.    Further, Crinnian has alleged that Mr. Wakefield has violated her expectations as a minority shareholder by discontinuing her Company salary and benefits and terminating her from the Company's Board of Directors.  It is clear from the Company's records, however, that Crinnian is not a shareholder and thus, cannot have her reasonable expectations as a shareholder violated.

21.    Mrs. Crinnian has also alleged that Wakefield's action relating to the sale of stock to Defendant Gordon and gift of a share to Deborah Ann Wakefield constituted a breach of duties owed by him to the Corporation and to the Trust.  Crinnian also alleges that in 2012 and 2013, Wakefield continuously has undertaken other acts to harm the Company and the Trust's interests.  Indeed, Wakefield actually has acted in the Company's best interest and in accordance with the Business Judgment Rule.

22.    There is a justiciable controversy presented to this Court over Plaintiff's actions and whether they are consistent with the Bylaws, Articles of Incorporation, Alabama law, fiduciary duty owed to all shareholders, the Business Judgment Rule, and duties owed to the Corporation.  For many years, Crinnian has taken legal positions that Plaintiff's actions violated his duties to the Corporation.  This historical pattern has culminated in Crinnian and Trust's counsel asserting these legal positions and that Wakefield's position is adverse to the Corporation and its interests.  *See* Exhibit C.  By these threats, Crinnian has sought to effect a "reverse squeeze out" to force Plaintiff and the Corporation, by threats of litigation, to purchase her shares for an excessive and exorbitant price in violation of the Company's policies.

23.     Wakefield seeks a determination by this Court whether his acts, each taken as President and Chief Executive Officer of the Company, are legal and in compliance with his obligations, both legal and fiduciary.  Plaintiff is entitled to a judgment in his favor as to all parties and transactions and thereof.

WHEREFORE, premises considered, Plaintiff Wakefield seeks a Declaratory Judgment against Defendants Wakefield's Inc., Susan Crinnian, the Susan Crinnian Trust, and John Gordon:

      a.   That in all transactions with John Gordon, Wakefield has acted consistently with the Articles of Incorporation, Bylaws, and his duties owed to the Company and its shareholders;

      b.   That in all transactions with John Gordon, Wakefield has protected the interests and rights of the Trust as a minority shareholder, and all other minority shareholders;

      c.   That in his actions as President and majority shareholder, Wakefield has acted in accordance with his legal and fiduciary duties set forth in the Articles of Incorporation, Bylaws, and Alabama law;

      d.   That Wakefield's actions are consistent with and protected by the Business Judgment Rule; and

      e.   For such other, additional relief to which Plaintiff may be entitled, premises considered.

## JURY DEMAND

Plaintiff requests a jury for all issues so triable.

Respectfully submitted,

/s · Andrew P. Campbell
Attorneys for Plaintiff

7

**OF COUNSEL:**
Andrew P. Campbell (CAM006)
Stephen D. Wadsworth (WAD025)
LEITMAN, SIEGAL, PAYNE & CAMPBELL, P.C.
420 20th Street North, Suite 2000
Birmingham, AL 35203
Telephone:     (205) 251-5900
Facsimile:     (205) 323-2098
acampbell@lspclaw.com
swadsworth@lspclaw.com


**PLEASE SERVE THE FOLLOWING DEFENDANTS BY CERTIFIED MAIL:**

**WAKEFIELD'S INC.**
c/o William M. Wakefield
1212 Quintard Avenue
Anniston, AL 36201

**SUSAN WAKEFIELD CRINNIAN**
1727 E. Seldon Lane
Phoenix, AZ 85020

**THE SUSAN CRINNIAN TRUST**
c/o Susan Wakefield Crinnian
1727 E. Seldon Lane
Phoenix, AZ 85020

**John W. Gordon**
1212 Quintard Avenue
Anniston, AL 36201

ELECTRONICALLY FILED
3/12/2014 3:25 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

# Exhibit

# A

*Organized April 22, 1963.*

# ARTICLES OF INCORPORATION

## OF

## WAKEFIELD'S, INC.

................................

The undersigned persons do hereby associate themselves together for the purpose of becoming a corporation of and under the Laws of the State of Florida, by and under the provisions of the Statutes of said State regulating the formation of corporations for profit.

### ARTICLE I - NAME.

The name of this Corporation shall be WAKEFIELD'S, INC.

### ARTICLE II - NATURE OF BUSINESS.

The general nature of the business to be transacted by this Corporation shall be as follows:

1. To carry on the business of establishing and conducting a general mercantile dry goods business and general department store business, including the buying, leasing, manufacturing, selling, and otherwise dealing in merchandise, hard and soft goods, wares and commodities of all kinds and descriptions; and to do any and all acts and things necessary, convenient, expedient, ancillary or in aid to the accomplishment of the foregoing.

2. To purchase, acquire, hold, improve, sell, convey, assign, lease, mortgage, encumber, hire and deal in real and personal property of every name and nature.

3. To buy, lease, build, erect, equip, operate, maintain and sell buildings, including but not limited to office buildings, store buildings and warehouses and stores of all kinds and nature.

4. To carry on and conduct a general real estate business, both as broker and owner, selling, buying, leasing and renting real estate.

5. To purchase, subscribe for, or otherwise acquire and own, hold, use, sell, assign, transfer, mortgage, pledge, exchange, or otherwise dispose of real and personal property of every kind and description, including shares of stock, bonds, debentures, notes, evidences of indebtedness, and other securities, contracts, or obligations of any corporation or corporations, association or associations, domestic or foreign, and to pay therefor in whole or in part in cash or by exchanging therefor stocks, bonds, or other evidences of indebtedness or securities of this or any other corporation, and while the owner or holder of any such real or personal property, stocks, bonds, debentures, notes, evidences of indebtedness or other securities, contracts, or obligations, to receive, collect, and dispose of the interest, dividends and income arising from such property, and dispose of the interest, dividends and income arising from such property, and to possess and exercise in respect thereof, all the rights, powers and privileges of ownership, including all voting powers on any stocks so owned.

6. To transport, carry and move by any and all means of transportation, on land, sea and in the air, any and all things deemed useful or necessary in carrying on the business of this Corporation.

7. To own, lease, use, experiment in, buy, sell and develop patents and patent rights of all kinds and for items, objects, products, mechanisms and goods, and to enter into contracts for the purchase, sale, disposition and traffic in same, both as principal and as agent.

-2-

8. To develop inventions of any and every kind, and to engage in scientific research and experiment of any and every kind.

9. To buy, sell and otherwise acquire, hold and dispose of franchises and licenses for the use of trade names, trade marks, patents and copyrights and for the use of different plans and processes in carrying on the business hereinabove indicated.

10. To manufacture, purchase or otherwise acquire, and to own, mortgage, pledge, sell, assign, transfer, or otherwise dispose of, and to invest in, trade in, deal in and with, goods, wares, merchandise, real and personal property, and services of every class, kind, and description; except that it is not to conduct a banking, safe deposit, trust, insurance, surety, express, railroad, canal, telegraph, telephone or cemetery company, a building and loan association, fraternal benefit society, state fair or exposition.

11. To carry on such other business as may be necessary, convenient, or desirable to accomplish the above purposes, and to do all other things incidental thereto which are not forbidden by law or by these Articles of Incorporation.

12. To do all acts and things necessary, convenient, or expedient to carry out the purposes for which this Corporation is formed.

13. Without, in any particular, limiting any of the objects or purposes or powers of this Corporation, it is hereby expressly declared and provided that this Corporation shall have power to do all acts or things necessary, incidental or

-3-

convenient to do, or calculated directly or indirectly, to
promote the interests of the Corporation, or enhance the value
or render profitable any of its property or rights; and in
carrying on its business, or for the purpose of obtaining or
furthering any of its objects, to do any and all acts and things
and to exercise any and all other powers which a natural
person could do and exercise and which now or hereafter
may be authorized by law.

14. The foregoing purposes shall, except where
otherwise expressed, be in no way limited or restricted by
reference to, or inference from, the terms of any other clause
of this or any other article of these Articles of Incorporation,
and shall be regarded as independent, and construed as powers
as well as purposes, notwithstanding the expressed enumeration
of powers elsewhere in these Articles.

### ARTICLE III - CAPITAL STOCK.

The maximum shares of stock that this Corporation
is authorized to have outstanding at any one time is Three
Thousand Five Hundred Shares (3,500) of common stock having
a nominal or par value of One Hundred Dollars ($100.00) per
share.

### ARTICLE IV - INITIAL CAPITAL.

The amount of capital with which this Corporation will
begin business is at least One Thousand Dollars ($1,000.00).

### ARTICLE V - TERM OF EXISTENCE.

This Corporation shall have perpetual existence.

### ARTICLE VI - ADDRESS.

The initial post office address of the principal office
of this Corporation in the State of Florida is 313 Radio

-4-

Building, 100 East Las Olas Boulevard, Fort Lauderdale, Florida. The Board of Directors may, from time to time, move the principal office to any other address in Florida. This Corporation shall, however, have the right and power to transact business and to establish offices and agencies at such other places, both within and without the State of Florida, as its Directors may authorize.

ARTICLE VII - NUMBER OF DIRECTORS.

The Directors of this Corporation shall not be less than three (3) nor more than seven (7) in number.

ARTICLE VIII - INITIAL DIRECTORS.

The names and post office addresses of the first Board of Directors of this Corporation, all of whom shall hold office for the first year or until their successors are chosen, are:

| NAME | ADDRESS |
|------|---------|
| MARTIN L. WAKEFIELD | 804 Commercial National Bank Bldg. Anniston, Alabama |
| WILLIAM J. WAKEFIELD | 804 Commercial National Bank Bldg. Anniston, Alabama |
| CHARLES S. DOSTER, JR. | 804 Commercial National Bank Bldg. Anniston, Alabama |

ARTICLE IX - SUBSCRIBERS.

The name and post office address of each Subscriber of these Articles of Incorporation is as follows:

| | |
|------|---------|
| CURTIN R. COLEMAN | P. O. Box 1037 Fort Lauderdale, Florida |
| WILLIAM F. LEONARD | P. O. Box 1037 Fort Lauderdale, Florida |
| WILLIAM A. MORSE | P. O. Box 1037 Fort Lauderdale, Florida |

ARTICLE X - POWERS.

This Corporation shall be authorized to exercise and

—5—

enjoy all of the powers, rights and privileges granted to or
conferred upon, corporations of a similar character by the
Laws of the State of Florida now or hereafter in force, and
the enumeration of powers herein shall not be deemed to
exclude or waive any powers, rights or privileges so
granted or conferred except where the same may be expressly
restricted or modified in these Articles.  This Corporation
shall have the following specific powers, which may, where
expedient, be considered as purposes additional  to those
enumerated in Article II:

   1.  To purchase, acquire, hold, sell, issue, assign,
transfer, mortgage, pledge and otherwise dispose of the shares
of the capital stock, bonds, debentures, or other evidence of
indebtedness of any corporation, domestic or foreign, and while
the owner thereof, to exercise all the rights and privileges of
ownership, including the right to vote thereon, and to issue
in exchange therefor its own stock, bonds and other obligations.

   2.  To acquire in any manner, exercise any and all
rights therein, including the voting of stock, and carry on,
through acquisition, merger, consolidation and combination,
all or any part of the capital stock, voting trust certificates,
assets, business and property, including the good will thereof,
of any person, firm, association, or corporation engaged in a
business similar to that authorized to be conducted by this
Corporation, or with which this Corporation is authorized
under the Laws of the State of Florida, to consolidate, or
whose capital stock this Corporation, under the Laws of the
State of Florida and the provisions of these Articles of
Incorporation, is authorized to purchase, and to undertake

-6-

may only be purchased, directly or indirectly, out of earned surplus.

ARTICLE XI — PROVISIONS FOR REGULATION OF
BUSINESS AND CONDUCT OF
AFFAIRS OF THIS CORPORATION.

1. BY-LAWS.

The Board of Directors shall have the sole power to adopt By-Laws for this Corporation, and to alter, amend, or repeal all such By-Laws.

2. LOCATION OF STOCKHOLDERS MEETINGS.

Meetings of the holders of the common stock shall be held within or without the State of Florida at such places as, from time to time, may be designated by the Board of Directors.

3. DIVIDENDS.

The holders of the common stock shall be entitled to receive dividends from any funds legally available for the purpose, when and as declared by the Board of Directors payable on a per share basis.

4. STOCKHOLDER VOTES ON CERTAIN MATTERS.

The holders of the common stock shall be entitled to vote on any merger, consolidation, or sale of assets of this Corporation as provided by law.

5. TRANSACTIONS INVOLVING DIRECTORS.

In the absence of fraud, no contract or other transaction between this Corporation and any other person, firm, association or corporation shall be wholly or partially invalidated or otherwise affected by the fact that one or more Directors of this Corporation are, or become, directors or officers of such other person, firm, association or

—9—

corporation, or are pecuniarily or otherwise interested in
such contract or transaction, provided that said fact of
membership or interest shall be known or fully disclosed
to a majority of the Board of Directors of this Corporation
throughout the duration of such contract or transaction, and
any such Director of this corporation may be counted in
determining the existence of a quorum at any meeting at
which said contract or transaction shall be authorized or
considered, and such Director shall have full power to vote
on the contract or transaction which shall be authorized or
considered.

6.   RATIFICATION OF TRANSACTIONS.

Any contract or transaction of this Corporation or of
the Board of Directors which shall be ratified at any
meeting by a majority of a quorum of the holders of the
common stock outstanding and entitled to vote shall, so far
as permitted by law, be as valid as though ratified by every
holder of the common stock of this Corporation.

7.   CONSIDERATION FOR SHARES.

The common stock for this Corporation shall be issued
for such consideration, but not less than the par value
thereof, as shall be fixed from time to time by the Board of
Directors.  In the absence of fraud, the judgment of the
Directors as to the value of any property or services received
in full or partial payment for shares shall be conclusive.
When shares are issued upon payment of the consideration fixed
by the Board of Directors, such shares shall be taken to be
fully paid stock and shall be non-assessable.

-10-

LAW OFFICES, COLEMAN, LEONARD AND MORSE, FORT LAUDERDALE, FLORIDA

8. OFFICERS.

This Corporation shall have a President, who shall be a Director, a Vice President, a Secretary and a Treasurer, and such other and additional officers as may be designated by the Board of Directors. All officers shall be elected by the Board of Directors and shall serve until their successors are chosen and qualify. Any person may hold two or more offices, except that the President may not also be the Secretary or Assistant Secretary. It shall not be necessary that a person be a Director in order to be elected as an Officer, nor shall it be necessary that a person be a stockholder in order that he be elected a Director.

9. SPECIFIC POWERS OF THE BOARD OF DIRECTORS.

In addition to any powers conferred upon the Board of Directors elsewhere in these Articles and by the Laws of the State of Florida, the Board of Directors is expressly authorized and empowered:

(a) To determine whether any and, if so, what part of the earned surplus of the Corporation shall be paid in dividends to the stockholders, and to direct and determine other use and disposition of any such earned surplus;

(b) To fix, from time to time, the amount of the profits of the Corporation to be reserved as working capital or for any other lawful purpose;

(c) To establish bonus, profit-sharing, stock option, or other types of incentive compensation plans for the employees, including Officers and Directors, of the Corporation, and to fix the amount of profits to be shared or

-11-

distributed, and to determine the persons to participate
in any such plans and the amount of their respective
participations.

10.  PROXY VOTING BY DIRECTORS.

Any Director absent from a meeting may be represented
by any other Director or Stockholder, who may cast the vote
of the absent Director according to the written instructions,
general or specific, of the absent Director.

11.  RESTRICTIONS ON TRANSFER OF STOCK.

(a)  No stockholder of this Corporation may, at any
time, sell, assign, transfer, mortgage, pledge, hypothecate,
or transfer on the books of the Corporation, any or all of
the shares of stock  of this Corporation held by him without
first offering said stock for sale to this Corporation.  In
the event any stockholder so offers any or all of his stock
for sale and the Corporation, after twenty (20) days time,
refuses or declines to purchase it, then the stockholder may
sell said stock to any person or corporation who is willing
to buy said stock.  This restriction on the transfer of stock
shall be written into each share of stock issued by this
Corporation by reference thereon to this Article of these
Articles of Incorporation.

(b)  Any such stock as is purchased, as aforesaid,
by this Corporation, shall be divided or assigned by the
then Secretary of this Corporation to any one or more of the
remaining stockholders of this Corporation, each their
respective pro rata share, on the payment of such stockholders
of the proportionate amount of the purchase price thereof,
and upon twenty (20) days notice to all such remaining
stockholders, by registered mail, return receipt requested,

-12-

sent to each of them to the address appearing on the
registry books of this Corporation; but, in the event that
any such remaining stockholder declines or fails, within
said twenty (20) days, to exercise the aforedescribed right
to acquire his proportionate share of such purchased stock,
then and thereupon, the other remaining stockholders shall
have the right to acquire such portion of such stock; but,
in the event that any of the aforedescribed purchased stock
is not taken and purchased by any or all of the remaining
stockholders, then and thereupon the remaining stock hereto-
fore acquired by this Corporation shall become its treasury
stock, to be subsequently held or reissued in any manner
and under such terms as the Board of Directors may determine.

(c)  All of the conditions and covenants of this
Section 11 of Article XI shall bind each of the incorporators
hereto, their heirs, executors, administrators and assigns
and also any receiver or trustee in bankruptcy or insolvency,
except as rejected by order or authorization of Court.

(d)  Notwithstanding the foregoing restrictions
on the transfer of stock, the Corporation shall have the power
to include in its By-Laws any regulatory or restrictive provi-
sions relating to the proposed sale, transfer or other disposi-
tion of any of its outstanding stock by any of its stockholders
and such provisions may be either consistent with or incon-
sistent with the foregoing provisions set forth in Sections
(a) and (b) of this Section 11 of Article XI.  The manner and
form, as well as all revelant terms, conditions and details
hereof shall be determined by the stockholders of this Cor-
poration; provided, however, that no such regulatory or res-

LAW OFFICES, COLEMAN, LEONARD AND MORSE, FORT LAUDERDALE, FLORIDA

LAW OFFICES, COLEMAN, LEONARD AND MORSE, FORT LAUDERDALE, FLORIDA.

-14-

tive provision shall affect the rights of third parties without actual knowledge thereof, unless such provision shall be plainly written upon the certificates evidencing the owner-ship of said stock.

ARTICLE XII - AMENDMENTS.

This corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation in the manner, now or hereinafter prescribed by statute, and all rights conferred on stockholders herein are granted subject to this reservation.

We, the undersigned, being all of the original subscribers and incorporators of the foregoing corporation, do hereby certify that the foregoing constitutes the proposed Articles of Incorporation of WAKEFIELD'S, INC., and we hereby declare and certify that the facts herein stated are true.

_____ (SEAL)
CURTIS H. COLEMAN

_____ (SEAL)
WILLIAM F. LEONARD

_____ (SEAL)
WILLIAM A. MORSE

STATE OF FLORIDA

COUNTY OF BROWARD

I HEREBY CERTIFY that on this day in the next above named State and County, before me, an officer duly authorized and acting, personally appeared CURTIN R. COLEMAN, WILLIAM F. LEONARD and WILLIAM A. MORSE, to me well known and known to me to be the individuals described in and who executed the foregoing instrument, and acknowledged then and therefbefore me that they executed said instrument for the purposes and reasons set out therein.

WITNESS my hand and official seal this ___18th___ day of April, A. D. 1963.

_Vivian C. Armstrong_
Notary Public

My Commission Expires:

Notary Public, State of Florida at Large
My commission expires Feb. 26, 1964
Bonded by Mass. Bonding & Insurance Co.

-15-

*Adopted 6/25/94*   ②

## BYLAWS

## ARTICLE I.

### Name and Location

Section 1. _Name._ The name of this corporation shall be WAKEFIELD'S, INC.

Section 2. _Principal Office._ The principal office of the corporation shall be 1212 Quintard Avenue, Anniston, Alabama 36201. Its principal office in the State of Florida shall be located at 1200 South Pine Island Rd., Plantation, Florida 33324.

Section 3. _Other Offices._ Other offices for the transaction of business shall be located at such places both within and without the State of Florida as the Board of Directors may from time to time determine.

## ARTICLE II.

### Capital Stock.

Section 1. _Amount._ The maximum shares of stock that this corporation is authorized to have outstanding at any one time is 3,500 shares of common stock having a nominal or par value of $100.00 per share.

Section 2. _Certificate._ All certificates of stock shall be signed by the Chairman of the Board or President and by the Secretary or Assistant Secretary. (Revised 8/14/93.)

Section 3. _Treasury Stock._ Treasury Stock may be held by the corporation subject to the disposal of the Board of Directors and shall neither vote nor participate in dividends.

Section 4. _Lien on Shares._ The corporation shall have a first lien on all the

1

shares of its capital stock and upon all dividends declared upon the same for any

indebtedness of the respective holders thereof to the corporation.

Section 5. <u>Transfers</u>. Transfers of stock shall be made only on the books of

the corporation; and the old certificate, properly endorsed, shall be surrendered and

cancelled before a new certificate is issued. The stock books of the corporation shall

be closed against transfers for a period of ten days before the day of payment of a

dividend and for ten days before each annual meeting of the stockholders.

Section 6. <u>Restriction on Transfers</u>. Any sale, assignment, transfer, mortgage,

pledge or hypothecation of the shares of capital stock of this corporation shall be

subject to the restrictions on same set forth in detail in Article XI, Section 11 of the

Articles of Incorporation of Wakefield's, Inc, filed in the Office of the Secretary of

State of Florida on April 22, 1962. There shall be typed or printed on each stock

certificate a clear reference to such transfer restrictions.

Section 6 (a). Notwithstanding the provisions of Section 6 of the Bylaws of

this corporation and notwithstanding the provisions of Article XI, Section 11, or

otherwise of the Articles of Incorporation of Wakefield's, Inc., the restrictions on the

transfers of the capital stock of this corporation shall not be applicable to any gift of

such shares of capital stock, provided that such gift shall be to a person kin by

affinity or consanguinity to the donor within the fourth degree.

All prior gifts heretofore made as permitted by this exception are hereby

ratified and confirmed. (Added June 8, 1985)

Section 7. <u>Lost, Defaced or Destroyed Certificates</u>. In the case of the loss,

defacement or destruction of a certificate held by a stockholder, the fact of such loss, defacement or destruction shall be reported by such stockholder to the corporation with his statement verified by oath or statutory declaration as to the loss, defacement or destruction and the circumstances attending the same and with his request for the issuance of a new certificate to replace the one so lost, defaced or destroyed. Upon the giving to the corporation of a bond or other security approved by the Board of Directors indemnifying the corporation against all loss, damage or expense to which the corporation may be put by reason of the issuing of a new certificate to the said stockholder, a new certificate may be issued to take the place of the one lost, defaced or destroyed if such issuance is ordered by the Chairman of the Board or by the President of the corporation for the time being or by the Board of Directors. Any such new certificate shall be plainly marked "duplicate" upon its face. (Revised Aug. 14, 1993)

ARTICLE III.

Stockholders' Meetings

Section 1. <u>Annual Meeting</u>. The annual meeting of the stockholders shall be held at a time and place (within Calhoun County, Alabama or elsewhere) at a time and place to be designated by the Board of Directors. (Note: This meeting is normally held in June of each year shortly after the CPA's annual report is available for inspection.) At such meeting, the stockholders shall elect directors to serve until their successors shall be elected and qualified.

Section 2. <u>Special Meetings</u>. A special meeting of the stockholders, to be held

3

at any time in any place, may be called at any time by the Chairman of the Board or in his absence, by the President; or by any two or more of the directors. It shall be duty of the directors, the Chairman of the Board or in his absence, the President to call such a meeting whenever so requested in writing by stockholders holding 50% or more of the capital stock. (Revised Aug 14, 1993)

Section 3. <u>Notice of Annual Meeting</u>. Notice of the time and place of all meetings shall be mailed by the Secretary, or personally delivered to each stockholder at least ten days before the date thereof unless all stockholders entitled to notice sign a waiver of notice of said meeting.

Section 4. <u>Notice of Special Meetings</u>. Notice of the time and place of all special meetings shall be mailed by the Secretary, or personally delivered to each stockholder at least seven days before the date thereof unless all stockholders entitled to notice sign a waiver of notice of said meeting.

Section 5. <u>Omission of Notice</u>. The accidental failure to give notice of any meeting or the nonreceipt of any notice by a stockholder or stockholders shall not invalidate any resolution passed or any proceedings taken at any meeting.

Section 6. <u>Presiding Officer</u>. The Chairman of the Board or, in his absence, the President, shall preside at all meetings of the stockholders. (Revised Aug. 14, 1993)

Section 7. <u>Votes</u>. At all meetings of the stockholders, each stockholder having the right to vote shall be entitled to one vote in person or by proxy for each share of stock having voting power owned by him, as evidenced by the books of the

corporation, on the date of closing the register of transfers; of if no date is fixed for closing the register or transfers, then on the date of the meetings.  The manner and procedure for voting in the election of directors is covered in the next succeeding Section (Section 8 of this Article III) of these Bylaws.  At all meetings of the stockholders, every question shall be determined by a majority of the votes unless otherwise specifically provided by the laws of Florida, the Articles of Incorporation of this corporation or by the Bylaws of this corporation.  Voting shall be by ballot upon demand of any stockholder.  Where there is more than one person registered as a stockholder in respect of any share or shares, any one of such persons may vote at any meeting either personally or by proxy in respect of such share or shares as if he were solely entitled thereto; and if more than one of such persons be present at any meeting personally or by proxy, that one of the said persons so present whose name stands first on the books of the corporation or before the other or others in the books of the corporation in respect of such share or shares shall alone be entitled to vote in respect thereof.

Section 8.  <u>Votes for Directors</u>.  Every stockholder shall have the right to vote in person or by proxy for the number of shares of stock owned by him for as many persons as there are directors to be elected.  Cumulative voting is not authorized.

Section 9.  <u>Votes by Corporations</u>.  Any corporation holding stock in this corporation may cast its vote through an officer of such corporation;  provided, however, that such officer may be called upon to furnish written evidence of his authority to cast such vote.  Any corporation holding stock in this corporation may

5

also cast its vote by proxy or voting certificate from said corporation to any individual.

Section 10.  Proxies.  Votes may be given either personally or by proxy.  An instrument appointing a proxy shall be in writing under the hand of the appointer or his attorney-in-fact duly authorized in writing or if the appointer is a corporation, either under the corporate seal or under the hand of an officer or attorney so authorized or signed on its behalf by its duly authorized officers; an instrument appointing a proxy signed by or on behalf of a corporation need not be under seal.  A person acting as proxy need not be a stockholder.  The directors may from time to time make regulations regarding the lodging of instruments appointing a proxy at some place or places other than the place at which a meeting or adjourned meeting of stockholders is to be held and for particulars of such instruments to be cabled or telegraphed or sent in writing before the meeting or adjourned meeting to the corporation or any agent of the corporation for the purpose of receiving such particulars and providing that instruments appointing a proxy so lodged may be voted  upon as though the instruments themselves were produced at the meeting or adjourned meeting and votes given in accordance with such regulations shall be valid and shall be counted.  Pending the making of such regulations, any officer of this corporation may, in his discretion, accept telegraphic or cable or written communication as to the authority of anyone claiming to vote on behalf of and to represent a stockholder notwithstanding that no instrument or proxy conferring such authority has been lodged with the corporation; and any votes

6

given in accordance with such telegraphic or cable or written communication accepted by such officer shall be valid and shall be counted.

Section 11.  Adjournment.   The Presiding Officer, with the consent of any meeting, may adjourn the same from time-to-time; and no notice of such adjournment need be given to the stockholders.  Any business may be brought before or dealt with at any adjourned meeting which might have been brought before or dealt with in the original meeting in accordance with the notice calling the same.

Section 12.  Quorum.  Holders of a majority of the shares issued and outstanding and entitled to vote, present in person or represented by proxy, shall be requisite and shall constitute a quorum at all meetings of the stockholders for the transaction of business except as otherwise provided by statute or by the Articles of Incorporation or Bylaws of this corporation.  The stockholders present at any meeting, though less than a quorum, may adjourn the meeting to a future time.

ARTICLE IV.

Directors

Section 1.  Number.  The business and property of the corporation shall be managed by a board of directors who shall be elected by the stockholders.  A director need not be a stockholder in order to hold such office. The number of Directors shall be determined from time to time by the Shareholders.

Section 2.  Term of Office.  The directors' term of office (subject to the provision, if any, of the Articles of Incorporation and Bylaws of this corporation)

7

shall be from the date of the meeting at which they are elected or appointed until the annual meeting next following or until their successors are appointed. A person appointed to fill a vacancy in the Board shall hold office subject to the provisions aforesaid for the balance of the unexpired term of the vacating director.

Section 3. Vacancies. Any vacancy occurring in the Board of Directors from any cause may be filled by the remaining directors, although less than a quorum. Any increase in the number of directors shall be construed as creating vacancies which may be filled by the directors in the manner above provided.

Section 4. Vacation of Office. The office of a director shall ipso facto be vacated (a) if he becomes bankrupt, makes an assignment for the benefit of creditors or files a petition under Chapter XI of the Bankruptcy Act; (b) if he becomes of unsound mind or is adjudicated an incompetent; or (c) if, by notice in writing to the corporation, he resigns his office.

Section 5. Annual Meeting. The annual meeting of the directors shall be held at the location of the annual stockholders' meeting immediately after the adjournment of such stockholders' meeting.

Section 6. Special Meetings. Special meetings of the Board of Directors may be called by the Chairman of the Board or, in his absence, the President or any two directors at any time, and the Secretary, by direction of the Chairman of the Board or, in his absence, the President or any two directors, shall convene a meeting of directors. Special meetings of the Board of Directors may be held at any place. (Revised Aug. 14, 1993.)

8

Section 7.  <u>Notice of Annual Meeting</u>.  Notice of the annual meeting of the Board of Directors shall be mailed to each director by the Secretary at least ten days previous to the time fixed for the annual meeting unless all of the directors entitled to notice sign a waiver of notice of such meeting.  For the first meeting of the Board of Directors at the annual stockholders' meeting or in the case of a director elected to fill a vacancy on the Board, no notice of such meeting shall be necessary to the newly-elected director or directors in order to legally constitute the meeting, provided a quorum of directors be present.

Section 8.  <u>Notice of Special Meetings</u>.  Notice of special meetings shall be delivered or mailed or telegraphed or cabled to each director not less than seven days (exclusive of the day on which the notice is delivered or mailed or telegraphed or cabled, but inclusive of the day for which notice is given) before the meeting is to take place.  Meetings of the Board of Directors may be held a any time without formal notice if all the directors are present or those absent have waived notice or have signified their consent in writing to the meeting being held in their absence. Notice of any meeting, or any irregularity in any meeting or the notice thereof may be waived by any director.

Section 9,  <u>Quorum</u>.  At all meetings of the Board of Directors, the presence of a majority of the directors shall be necessary and sufficient to constitute a quorum for the transaction of business.

Section 10.  <u>Voting</u>.  The act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board of Directors except

9

as may be otherwise specifically provided for by Florida Statutes or by the Articles of Incorporation or Bylaws of this corporation.

Section 11. <u>Remuneration</u>. The remuneration to be paid to the directors shall be such, if any, as the Board of Directors shall from time-to-time determine, and such remuneration shall be in addition to the salary paid to any officer of the corporation who is also a member of the Board of Directors. The directors may also, by resolution, reward special services on the corporation's behalf other than the routine work ordinarily required of a director by the corporation and confirmation of any such resolution by the stockholders shall not be required. The directors shall also be entitled to be paid their traveling and other expenses properly incurred by them in connection with the affairs of the corporation including travel to and from Directors Meetings.

Section 12. <u>Stockholders' Approval of Contracts</u>. The Board of Directors, in its discretion, may submit any contract, act or transaction for approval or ratification at any annual meeting of the stockholders or at any special meeting of the stockholders called for the purpose of considering the same and any contract, act or transaction that shall be approved or ratified by a resolution passed by a majority of the votes cast at any such meeting (unless any different or additional requirement is imposed by Florida Statutes or the Articles of Incorporation or Bylaws of this corporation) shall be as valid and as binding upon the corporation and upon all of the stockholders as though it had been approved or ratified by every stockholder of the corporation.

Section 13. Protection of Directors or Officers.

(a)  The directors and officers for the time being of the corporation and any of them and any of their heirs, executors and administrators shall be indemnified and saved harmless out of the assets and profits of the corporation from and against all actions, costs, charges, losses, damages and expenses which they, or any of them, or any of their heirs, executors or administrators shall or may incur or sustain or, by reason of any act, done, concurred in or omitted in or about the execution of their duty or supposed duty in their respective offices except such (if any) as they shall incur or sustain by reason or through their own willful neglect or default, respectively.

(b)  No director or officer for the time being of the corporation shall be liable for the acts, receipts, neglects or defaults of any other director or officer or employee or for joining in any receipt or act for conformity or for any loss, damage or expense happening to the corporation through the insufficiency or deficiency of title to any property acquired by order of the Board of Directors of the corporation for or on behalf of the corporation or for the insufficiency or deficiency of any security in or upon which any of the moneys of or belonging to the corporation shall be placed out or invested or for any loss or damage arising from the bankruptcy, insolvency or tortious act of any person, firm or corporation, including any person, firm or corporation with whom or which any moneys, securities or effects shall be lodged or deposited, or for any loss, conversion, misapplication or misappropriation of or any damage resulting from any dealings with any moneys, securities or other assets

11

belonging to the corporation or for any other loss, damage or misfortune whatever which may happen in the execution of the duties of his respective office or trust or in relation thereto unless the same shall happen by or through his own willful act or default. The directors for the time being of the corporation shall not be under any duty or responsibility in respect of any contract, act or transaction whether or not made, done or entered into in the name or on behalf of the corporation, except such as shall have been submitted to and authorized or approved by the Board of Directors. If any director or officer of the corporation shall be employed by or shall perform services for the corporation otherwise than as a director or officer or shall be a member of a firm or a stockholder, director or officer of a company which is employed by or performs services for the corporation, the fact of his being a director or officer of the corporation shall not disentitle such director or officer of such firm or company, as the case may be, from receiving proper remuneration for such services.

(c.) In consideration of the agreement by the officers and directors of this corporation to serve as directors of this corporation to serve as such, Wakefield's, Inc. shall, to the extent authorized by and not prohibited by law, indemnify such officers and directors, and each of them separately or severally, against loss or expense by reason of their being made a party to any threatened, pending or completed claim, action, suit or proceeding, whether civil, criminal, administrative or investigative, including appeals (other than an action by or in the right of the corporation) by reason of the fact that such person is, or was such a director or

12

officer, or is, or was serving at the request of the corporation in any other capacity. The term "loss" as used herein includes, without limiting the generality of such terms, all expenses, including attorneys' fees, judgments, fines, amounts paid in settlement actually and reasonably incurred by such person in connection with such claim, action, suit or proceeding if such person acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interest of Wakefield's, Inc. and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.

This subsection (c) shall apply for the protection of all officers and directors of Wakefield's, Inc., including those now serving and those hereafter elected. (Added March 7, 1987.)

Section 14.  Indemnities to Directors and Others.  The directors of the corporation are hereby authorized from time-to-time to cause the corporation to give indemnities to any director or other person who has undertaken or is about to undertake any liability on behalf of the corporation or any corporation controlled by it and to secure such director or other person against loss by mortgage and charge upon the whole or any part of the real and personal property of the corporation by way of security, and any action from time-to-time taken by the directors under this section shall not require approval of or confirmation by the stockholders.

Section 15.  Executive Committee.  The Board of Directors may, by resolution, appoint members of the Board of Directors as an executive committee to manage the business of the corporation during the interim between meetings of the Board.

13

## ARTICLE V.

### Officers

Section 1.  Officers.  The Board of Directors  shall annually or more frequently, as may be required, elect a Chairman of the Board, a President, one or more Vice-Presidents, a Secretary and a Treasurer.  The Board of Directors may from time-to-time create and fill vacancies in such other offices as it shall deem necessary.  The persons elected to fill such offices shall perform such duties as from time-to-time shall be prescribed by the Board.  None of the officers except the Chairman of the Board and the President need be a member of the Board of Directors.  A Chairman of the Board or a President who ceases to be a director shall cease to hold office as such as soon as his successor is elected and qualified.  Any two offices may be held by the same person excepting those of (a) President and vice president,  (b) Chairman of the Board or President and Secretary.  A vote of the majority of the Board of Directors shall be necessary for the election or appointment of officers. (Revised Aug. 14, 1993)

Section 2.   Remuneration and Removal.  The remuneration, if any, of all officers elected  or appointed by the Board shall be determined from time-to-time by resolution of the Board and the fact that any officer or employee is a director or stockholder of the corporation shall not disqualify him from receiving such remuneration as may be determined.  All officers, in the absence of agreement to the contrary, shall be subject to removal by resolution of the Board at any time, with or without cause, provided that a majority of the Board shall vote in favor thereof.

Section 3.  The Chairman of the Board.  The Chairman of the Board shall be

14

the chief executive officer of the corporation; he shall, if present, preside at all meetings of stockholders and directors; he shall have general and active management of the affairs of the corporation; he shall see that all orders and resolutions of the Board are carried into effect; he shall have general superintendence and direction of all officers of the corporation and shall see that their duties are properly performed; he shall sign all instruments which require his signature and shall perform all duties incident to his office and shall have such other powers and duties as may from time-to-time be assigned to him by the Board. (Revised Aug 14, 1993)

Section 3a. The President. The President shall (subject to the primary authority of the Chairman of the Board and subject to the authority of the Chairman of the Board to direct the President in any matter concerning the affairs of the Company) shall have authority commensurate with and identical to that of the Chairman of the Board. In the absence of the Chairman of the Board the President shall be the Chief Executive officer of the corporation and shall have all of the powers and prerogatives of the Chairman of the Board. (Added Aug 14, 1993)

Section 4. The Vice-President. The Vice-President and additional Vice-Presidents, if any, in the order designated by the Board of Directors shall be vested with all powers and shall perform all the duties of the President in the absence or disability or refusal to act of the President. The Vice-President and additional Vice-Presidents, if any, shall also have such other powers and duties, if any, as may from time-to-time be assigned to him or them by the Board of Directors.

15

Section 5.  <u>The Secretary, the Treasurer and the Comptroller.</u>  The Secretary, the Treasurer and the Comptroller (if such position is created and filled) shall perform such duties as are incident to their offices, or are properly required by them by the Board of Directors, or are assigned to them by the Articles of Incorporation or these Bylaws.  The Assistant Secretaries and Assistant Treasurer (if such positions are created and filled), in the order of their seniority, in the absence of disability or refusal to act of the Secretary or Treasurer, respectively, shall perform their respective duties and exercise the respective powers of the Secretary and the Treasurer and shall perform such other duties as may be assigned by the Board of Directors.

Section 6.  <u>Other Officers.</u>  Other subordinate officers appointed by the Board of Directors shall exercise such power and perform such duties as may be delegated to them by the resolutions appointing them, or by subsequent resolutions adopted from time-to-time.

Section 7.  <u>Absence, Disability, Etc.</u>  In case of the absence or disability of any officer of the corporation and of any person hereby authorized to act in his place during such period of absence or disability, the Board of Directors may from time-to-time delegate the powers and duties of such officers to any other officer, or any director or any other person whom it may select.

Section 8.  <u>Vacancies.</u>  If any of the officers required by these Bylaws or created by the Board of Directors pursuant to these Bylaws shall be or become vacant by reason of death, resignation, disqualification or otherwise, the directors, by

16

resolution duly passed at any meeting duly called and held, may elect or appoint an officer to fill such vacancy.

## ARTICLE VI.

### General Provisions.

Section 1.  Seal.  The seal, an impression of which is stamped in the margin hereof, shall be the corporate seal of this corporation.  The corporation may cause to be made one or more facsimiles of the corporate seal and may, by writing under its corporate seal, authorize any person appointed for the purpose to affix the official seal to any deed or other document to which the corporation is a party in any state, country or place.

Section 2.  Dividends.  The directors may from time-to-time, by resolution, declare dividends and pay the same out of the funds of the corporation available for the purpose.

Section 3.  Voting Shares and Securities in Other Corporations.  All of the shares or other securities carrying voting rights of any other corporation, or corporations, held from time-to-time by the corporation may be voted at any and all meetings of stockholders, bondholders, debenture holders, debenture stockholders or holders of other securities (as the case may be) of such other corporation or corporations and in such manner and by such person, or persons, as the Board of Directors of this corporation shall from time-to-time determine.  The proper signing officers of the corporation may also from time-to-time execute and deliver  for and on behalf of the corporation proxies and/or arrange for the issuance of voting

17

certificates and/or other evidence of the right to vote in such names as they may determine without the necessity of a resolution or other action by the Board.

Section 4.  Withholding Information from Stockholders.

(a)  No stockholder shall be entitled to discovery of any information respecting any details or conduct of the corporation's business which, in the opinion of the directors, would not be expedient, or in the interests of the stockholders of the corporation to communicate to the public.

(b) . The directors may from time-to-time determine whether and to what extent and at what time and place and under what conditions or regulations the accounts and books of the corporation, or any of them, shall be open to the inspection of stockholders; and no stockholder shall have any right to inspect any account, or book or document of the corporation except as conferred by statute or authorized by the Board of Directors or by resolution of the stockholders in general meeting.

Section 5.  Notices.  Any notice may be served by the corporation to any stockholder or director, either personally or by sending it through the mail in a prepaid envelope, or by telegram or cablegram or facsimile message addressed to such stockholder or director at his address or, in case of any facsimile message, the facsimile phone number as the same appears in the books of the corporation; or if no address be given therein, then to the last address of such stockholder or director known to the Secretary.  With respect to every notice sent by mail, it shall be sufficient to prove that the envelope containing the notice was properly addressed

18

and put into the post office or into a letter box.

Section 6. <u>Shares Registered in More than One name</u>. All notices with respect to any shares registered in more than one name shall be given to whichever of such persons is named first in the books of the corporation and notice so given shall be sufficient notice to all the holders of such shares.

Section 7. <u>Persons Becoming Entitled by Operation of Law</u>. Every person who, by operation of law, transfer or by any other means whatsoever, shall become entitled to any share or shares shall be bound by every notice in respect of such share or shares which were duly given to the person from whom he derives his title to such share or shares before his name and address were entered on the books of the corporation.

Section 8. <u>Deceased Stockholder</u>. Any notice or document delivered or sent by mail or left at the address of any stockholder as the same appears in the books of the corporation shall, notwithstanding that such stockholder be then deceased, and whether or not the corporation has notice of his death, be deemed to have been duly served in respect to the shares, whether held solely or with other persons by such stockholder until some other person be entered in his stead in the books of the corporation as the holder, or one of the holders, thereof; and such service shall, for all purposes, be deemed a sufficient service of such notice or document on his heirs, executors or administrators and on all persons, if any, interested with him in such shares.

Section 9. <u>Signature to Notices</u>. The signature to any notice to be given by the

19

corporation may be written, stamped, typewritten or printed, or partly written, stamped, typewritten or printed.

Section 10.  Computation of Time.  Where a given number of days' notice, or notice extending over any period, is required to be given, the day of service or mailing of the notice shall, unless it is otherwise provided, be counted in such number of days or other period.

Section 11.  Proof of Service.  A certificate of the Secretary or other duly authorized officer of the corporation in office at the time of the making of the certificate or of the transfer officer of any transfer agent of shares of any class of the corporation as to facts in relation to the mailing or delivery of any notice to any stockholder, director or officer or publication of any notice shall be conclusive evidence thereof and shall be binding on every stockholder, director or officer of the corporation, as the case may be.

Section 12.  Checks, Drafts and Notes.  All checks, drafts or orders for the payment of money and all notes and acceptance and bills of exchange shall be signed by such officer, or offices, or person, or persons, whether or not officer of the corporation and in such manner as the Board of Directors may from time-to-time designate.

Section 13.  Execution of Instruments.  Contracts, documents or any instruments in writing requiring the signature of the corporation may be signed by the Chairman of the Board, President or the Vice-President and the Secretary or an Assistant Secretary; and all contracts, documents and instruments in writing so

20

signed shall be binding upon the corporation without any further authorization or formality. The Board of Directors shall have power from time-to-time, by resolution, to appoint any officer, or officers, person, or persons, on behalf of the corporation either to sign contracts, documents and instruments in writing generally or to sign specific contracts, documents or instruments in writing. The seal of the corporation may, when required, be affixed to contracts, documents and instruments in writing, signed as aforesaid or by any officer, or officers, person, or persons, appointed as aforesaid by resolution of the Board of Directors. If the corporation has an official seal as authorized by this bylaw, the person affixing any such seal shall, by writing under his hand on the deed or other document to which the official seal is affixed, certify the date and place of affixing the same. The term "contracts, documents or any instruments in writing" as used herein, shall include deeds, mortgages, security agreements, hypothecations, charges, conveyances, transfers and assignments of property, real or personal, immovable or movable, agreements, releases, receipts and discharges for the payment of money or other obligations, conveyances and transfers and assignments of shares, stocks, bonds, debentures or other securities and all paper writings. (Revised Aug. 14, 1993)

Section 14. <u>Fiscal Year</u>. The fiscal year of the corporation shall end on that Saturday of each year which falls closest to the last day of each January. Said Saturday may fall in the month of January or in the month of February. Said fiscal year shall begin on the next succeeding day. Wakefield's shall be on a so called 4-5-4 quarterly schedule, so that each quarter shall have two-four week months and one

five week month.

Section 15. <u>Interpretation.</u>  In all bylaws of the corporation, the singular shall include the plural and the plural, the singular.  The word "person" shall include firms and corporations, and the masculine shall include the feminine.  Where reference is made in this bylaw to any statute or section thereof, such reference shall be deemed to extend and apply to any amendment to said statute or section, as the case may be.

ARTICLE VII.

PRE-INCORPORATION AGREEMENT.

Section 1. <u>Pre-Incorporation Agreement.</u>  Pursuant to the provisions of the Pre-Incorporation Agreement between MARTIN L. WAKEFIELD and WILLIAM J. WAKEFIELD under the date of March 25, 1963, said Agreement is hereby adopted and made a part of the Bylaws of WAKEFIELD'S, INC, and the provisions thereof are incorporated herein by reference, as if set forth in haec verba.

ARTICLE VIII.

Proxy Voting by Directors.

Section 1. <u>Proxy Voting by Directors.</u>  Pursuant to the authority prescribed in Article XI, Section 10 of the Articles of Incorporation of WAKEFIELD'S, INC, any director absent from a meeting may be represented by any other director or stockholder who may cast the vote of the absent director according to the written instructions, general or special, of the absent director.  Proxies may not be utilized to constitute a quorum where there is not a quorum physically present.

22

ARTICLE IX.

Amendments.

Section 1. <u>Amendments</u>. Amendments to these Bylaws may be made by a vote of a majority of the directors at any annual directors meeting, or at any special directors meeting when the proposed amendment has been set out in the notice of such meeting, or in a written waiver of notice, as provided for in these Bylaws.

ELECTRONICALLY FILED
3/12/2014 3:25 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

# Exhibit B

# FELLOWS LA BRIOLA LLP

*Peachtree Center*
*Suite 2300 South Tower*
*225 Peachtree Street, N.E.*
*Atlanta, Georgia 30303-1731*

Stephen T. LaBriola
slabriola@fellab.com

*Telephone (404) 586-9200*
*Facsimile (404) 586-9201*
*www.fellab.com*

Writer's Direct Dial Number
(404) 586-2020

February 26, 2014

<u>**Via U.S. Mail and Email**</u>

Mr. Bill Wakefield
Wakefield's Inc.
P.O. Box 400
Anniston, Alabama 36202
bwakefield@wakefields.com

Re:    Objection to sale of Wakefield's, Inc. shares to John Gordon.

Dear Mr. Wakefield,

Undersigned counsel has been retained by minority shareholder Susan Wakefield Crinnian, as Trustee of the Susan Crinnian Trust,[1] to object to the sale of Wakefield's, Inc. (the "Corporation") shares to John Gordon.  Based on the facts presented below, it appears that the sale of shares to Mr. Gordon is part of systematic approach by you, as majority shareholder, to wrongfully oppress Mrs. Crinnian, as minority shareholder.  As discussed below, through your wrongful conduct you have sought to defeat Mrs. Crinnian's reasonable expectations as a minority shareholder of the Corporation.  Due to the improper and misdated notice of the sale of shares to Mr. Gordon as well as the likelihood that your course of action in oppressing Mrs. Crinnian's expectations and benefits of being a minority shareholder of Wakefield's will continue, Mrs. Crinnian objects to the sale of shares to Mr. Gordon.  Additionally, due to the expectation that this oppressive behavior will continue, Mrs. Crinnian further recognizes the futility in purchasing any additional shares of Wakefield's, as this would not change her minority status and would only serve to have her waste more of her personal resources on shares that you have systematically worked to devalue.

The steps that you, as majority shareholder, have taken to oppress Mrs. Crinnian include, but are not limited to: (1) Using your majority power to have your old friend John Gordon appointed to the board of directors in May 2012; (2) Using your majority power to ensure that Mrs. Crinnian's history of receiving a regular salary from the

---

[1] Mrs. Crinnian is the trustee and agent of the Susan Crinnian Trust and has identical goals and interests as the Susan Crinnian Trust.  Therefore, references to "Mrs. Crinnian" include her individual capacity, as well as her representative capacity as the trustee and agent of the Susan Crinnian Trust.

Bill Wakefield
February 26, 2014
Page 2 of 5

Corporation discontinued after 2012; (3) Using your majority power and control of the board of directors in May of 2013 to ensure that no dividend was issued in 2013. This further frustrated Mrs. Crinnian's expectations of compensation and value from her minority ownership in the Corporation; (4) Using your majority power in June of 2013 to pass a resolution that undervalued the per share stock price as the arbitrary value of 50% of book value; (5) Giving one of your shares to your wife, Deborah Ann Wakefield, in order to have an additional voting party to the shareholders meeting to support your majority positions in the November 2013 shareholder meeting; (6) Using your majority power to terminate Mrs. Crinnian from the board of directors, a position that she had held for at least the past ten (10) years; and (7) Using your majority power to allow your friend, Mr. Gordon, to purchase shares in the Corporation, further diluting Mrs. Crinnian's interest while eliminating Mrs. Crinnian's compensation by way of non-issuance of dividends and salary.

Your pattern of oppressive actions occurred in 2012 and 2013, following the death of your and Mrs. Crinnian father, Martin Wakefield, who founded the Corporation and ran it for the benefit of and with the ownership interests provided to his three children—you, Mrs. Crinnian, and Nannette Wakefield White. Your pattern of oppressive behavior coincides with your acquisition of further majority power under your inheritance through contested estate litigation as well as other actions, as discussed below. Although many of these actions were ostensibly taken pursuant to a vote of the board of directors or shareholders, these actions were led by you as majority shareholder with the intent of oppressing Mrs. Crinnian's ownership interest in the Corporation.

The May 19, 2012 shareholders meeting was the first shareholders meeting following the death of Martin L. Wakefield. You appeared at this shareholders meeting with 638 of your own shares. The Estate of Martin L. Wakefield held 378 shares at this meeting and was represented by you and Mrs. White as Personal Representatives of the estate. Mrs. Crinnian appeared on behalf of the Susan Crinnian Trust's 230 shares. Through your majority interest in the Corporation, you elected your friend Mr. Gordon as a director to the Corporation. Instead of voting for each director in turn, the slate of proposed directors was brought as a panel of five on a single vote. This meant that Mrs. Crinnian could not object to Mr. Gordon being elected as an officer individually, but instead was required to vote on the panel as a whole, which included the election of herself to the board of directors. The panel of directors, including the addition of Mr. Gordon, passed due to your majority interest in the Corporation.

Also on May 19, 2012 you used your majority interest in the Corporation to ensure that Mrs. Crinnian was no longer provided a salary by the Corporation. Mrs. Crinnian had historically been provided a salary by the Corporation for at least the past ten (10) years. Mrs. Crinnian's salary had been $30,000 paid in 26 equal installments the past several years. This regular salary was part of her reasonable expectation as an owner and shareholder. However, through your majority interest, you ensured that Mrs. Crinnian's salary was not provided for in 2013.

Bill Wakefield
February 26, 2014
Page 3 of 5

At the June 13, 2012 joint meeting of shareholders and directors, you appeared with 956 shares (following a significant increase in your shares due to the settlement of the Estate of Martin L. Wakefield), Mrs. White appeared with 404 shares, and Mrs. Crinnian appeared on behalf of the Susan Crinnian Trust with 230 Shares. Through your majority interest as well as your control and influence over the board of directors, you ensured passage of the resolution approving a sale of Nannette Wakefield White's 404 shares of the Corporation. This action was done in an attempt to create a devalued per share value of the Corporation at 50% of book value.

The purported valuation of the shares of the Corporation at 50% of book value is arbitrary and capricious for at least three reasons. First, it is inconsistent with offers you have made to purchase and sell shares in the past.  These past offers include your 2003 offer to purchase or sell shares at 77% of book value ($11,816 per share) as well as your 2009 offer to purchase Mrs. Crinnian's 230 shares for $2,713,816 ($11,799.20 per share or 80% of the book value noted in your offer letter). Second, although the agreement with Mrs. White states a purchase price of $8,033.00 per share (purportedly 50% of book value), this is not the true value given the other sums paid pursuant to the agreement with Mrs. White. This agreement also agreed to pay Mrs. White a salary in the amount of $70,000 plus benefits for at least three years; a consultancy fee in the amount of $43,500 for not less than two years; and a sum of $500,000 for a 5-year non-compete restriction. These additional sums bring the actual compensation paid for Mrs. White's sale of ownership interest in the Corporation to a much higher valuation than the $8,033 per share price suggests.  Third, using any percentage of book as the sole manner of calculating the share price of a closely held corporation such as the Corporation is an arbitrary way in which to value these shares. Mrs. Crinnian voted "No" both in her capacity as shareholder as well as director to the resolution regarding the sale of Mrs. White's shares.

At the May 18, 2013 shareholder meeting, you appeared with 966 shares, Mrs. Crinnian appeared on behalf of the Susan Crinnian Trust with 230 shares, and 394 shares were held in treasury following the sale of Mrs. White's shares. At the directors meeting, despite an increase in your yearly salary as well as a $10,000 bonus paid to you in addition to your increased yearly salary, you stated that no dividend would be awarded.  Therefore, contrary to the preceding years and history of Mrs. Crinnian receiving both a salary and a dividend from the Corporation, Mrs. Crinnian received neither of these expected forms of compensation.

At the November 1, 2013 shareholders meeting, your wife, Deborah Ann Wakefield, appeared as a shareholder after you gave her one of your shares. Therefore, you appeared with 965 shares; Mrs. Wakefield with 1 share; and Mrs. Crinnian appeared on behalf of the Susan Crinnian Trust with 230 shares.  By giving Mrs. Wakefield one of your shares, she was able to second and/or support any motion made by you.  She also was able to make motions that furthered your interest.  At this meeting, you used your majority interest in the Corporation to approve a sale of shares to Mr. Gordon at an undervalued per-share amount.  As discussed above, 50% of book value for a share price is arbitrary and undervalued.  Additionally, it appears evident from statements made in the November 1, 2013 shareholders meeting that Mr. Gordon's

Bill Wakefield
February 26, 2014
Page 4 of 5

employment is part of the compensation and value he is perceived as contributing in return for the issuance of shares. Despite Mrs. Crinnian's vote against the sale of shares to Mr. Gordon, you used your majority interest in the Corporation to pass the resolution in the shareholders meeting and to dilute further Mrs. Crinnian's minority interest in the Corporation.

Additionally, at the November 1, 2013 shareholders meeting, you used your majority interest in the Corporation to ensure that Mrs. Crinnian was not elected to the board of directors. Mrs. Crinnian has served on the board of directors for at least the past 10 years. However, through your majority interest in the Corporation and through your role in ushering the exit of Mrs. White from the Corporation, you were able to ensure that Mrs. Crinnian would no longer have any role in the management of the Corporation. This, along with the failure to issue her a dividend, the termination of her expected salary, and the dilution of her percentage interest in the Corporation were all done with the intention of oppressing her minority interest.

After Mrs. Crinnian was terminated from her role as a director of the Corporation, she was precluded from attending the November 1, 2013 or subsequent board meetings. The board of directors was instead you, your wife, Mr. Gordon, and Mr. Doster. The minutes of the November 1, 2013 board meeting state that the resolution relating to the proposed sale of stock by the Corporation to Mr. Gordon passed by a vote of three votes (you, your wife and Mr. Doster) to none with Mr. Gordon abstaining under the conflicts of interest rule. Additionally, the board of directors' minutes note that no motion was made in respect to a proposed dividend.

Due to your majority interest, Mrs. Crinnian has come to understand that Mr. Gordon previously purchased 125 shares in the Corporation at the undervalued share price of 50% of book. Mrs. Crinnian was sent a misdated letter regarding this purchase of shares. Mrs. Crinnian objects to the notice that she was provided regarding this share purchase.

Mrs. Crinnian received another misdated letter by way of email on January 24, 2014 regarding another proposed purchase of 125 shares by Mr. Gordon. The letter is dated November 10, 2013, but the email is dated January 24, 2014 creating confusion. It is unclear by the correspondence how many shares Mr. Gordon has purchased or when. Therefore, in addition to the reasons discussed above regarding the role and intent that the Gordon share purchases play in your attempt to oppress Mrs. Crinnian and dilute her interest in the Corporation, Mrs. Crinnian objects to any purchases of shares made by Mr. Gordon on the basis of improper notice.

Due to your actions, Mrs. Crinnian's reasonable expectations of her minority ownership in the Corporation have been severely frustrated and eliminated. To the extent you believe that the timeline and events discussed herein are factually inaccurate, please let us know by a detailed response including any documents that support any perceived factual inaccuracies.

Bill Wakefield
February 26, 2014
Page 5 of 5

Sincerely,

Stephen T. LaBriola
FOR THE FIRM

cc:    Tony Freeman, Esq.
       Megan C. Haley, Esq.
       Susan Crinnian

ELECTRONICALLY FILED
3/12/2014 3:25 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

Exhibit

C

-------- Original Message --------
**Subject:** Re: Correspondence from counsel to Susan Crinnian, as Trustee of the Susan Crinnian Trust, to Bill Wakefield
**Date:** Wed, 26 Feb 2014 16:38:24 -0600
**From:** Eric Fryar <eric@fryarlawfirm.com>
**To:** Megan Haley <mhaley@fellab.com>, "Stephen T. LaBriola Esq." <slabriola@fellab.com>
**CC:** bwakefield@wakefields.com <bwakefield@wakefields.com>, Tony Freeman <Tony@fhlawaz.com>, Laura Bray <Laura@fhlawaz.com>, Susan Crinnian <susan.crinnian@cox.net>

Good letters. Note also that there is a derivative claim against Bill for selling stock to Gordon for less than its fair value. The damages would be the difference between the purchase price and the fair value, and we would be in a position to recover attorney's fees from the corporation if successful. I don't believe any further notice is necessary, as a specific demand would be futile.



**FRYAR LAW FIRM P.C.**

Eric Fryar
Fryar Law Firm, P.C.
912 Prairie, Suite 100
Houston, Texas 77002-3145
Direct:  281.715.6396 x101
www.ShareholderOppression.com

THE INFORMATION CONTAINED IN THIS E-MAIL OR THE ATTACHMENTS IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL TO WHOM THIS IS DIRECTED.  IF THE RECEIVER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, YOU ARE HEREBY NOTIFIED NOT TO READ THE COMMENTS OR ANY ATTACHMENTS AND THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, E-MAIL THE SENDER TO NOTIFY HIM/HER AND DELETE THE COMMUNICATION.

On Feb 26, 2014, at 4:14 PM, Megan Haley <mhaley@fellab.com> wrote:

Good afternoon,

1

Attached please find copies of two letters sent today from Stephen T. LaBriola, counsel to Susan Crinnian, Trustee of the Susan Crinnian Trust, to Mr. Bill Wakefield. A copy of these correspondence are also being sent to you via U.S. Mail.

Sincerely,

Megan C. Haley
mhaley@fellab.com
Fellows LaBriola LLP
Peachtree Center
Suite 2300 South Tower
225 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200
(404) 586-2047  direct
(404) 521-4987  facsimile

<02-26-14 Letter to Bill Wakefield.pdf><02-26-14 Letter of Settlement and Compromise.pdf>

| State of Alabama<br><br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>11-CV-2014-900142.00 |
|---|---|---|

IN THE CIRCUIT COURT OF CALHOUN COUNTY

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL

WAKEFIELD'S INC., WILLIAM WAKEFIELD 1212 QUINTARD AVENUE, ANNISTON, AL 36201

NOTICE TO _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY ANDREW P. CAMPBELL

WHOSE ADDRESS IS 420 20th Street North Suite 2000, BIRMINGHAM, AL 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    WILLIAM M. WAKEFIELD
   pursuant to the Alabama Rules of the Civil Procedure

Date   3/12/2014 3:25:42 PM      /s/ ELI HENDERSON _____

   Clerk/Register

   25 WEST 11TH STREEt

   ANNISTON, AL 36201

☑ Certified Mail is hereby requested      /s/ ANDREW P. CAMPBELL _____

   Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____
                                                                      (Date)

_____        _____        _____
Date                                        Server's Signature                          Address of Server

_____        _____        _____
Type of Server                              Server's Printed Name

                                                                                        _____
                                                                                        Phone Number of Server

| State of Alabama<br><br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>11-CV-2014-900142.00 |
|---|---|---|

IN THE CIRCUIT COURT OF CALHOUN COUNTY

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL

SUSAN WAKEFIELD CRINNIAN, 1727 E. SELDON LANE, PHOENIX, AZ 85020

NOTICE TO _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY ANDREW P. CAMPBELL

WHOSE ADDRESS IS 420 20th Street North Suite 2000, BIRMINGHAM, AL 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of   WILLIAM M. WAKEFIELD

pursuant to the Alabama Rules of the Civil Procedure

Date   3/12/2014 3:25:42 PM        /s/ ELI HENDERSON _____

Clerk/Register

25 WEST 11TH STREEt

ANNISTON, AL 36201

☑ Certified Mail is hereby requested     /s/ ANDREW P. CAMPBELL _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

(Date)

_____        _____        _____
Date                            Server's Signature              Address of Server

_____        _____        _____
Type of Server                  Server's Printed Name

_____
Phone Number of Server

| State of Alabama<br><br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>11-CV-2014-900142.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF CALHOUN COUNTY
### WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL

SUSAN CRINNIAN TRUST, C/O SUSAN CRINNIAN 1727 E. SELDON LANE, PHOENIX, AZ 85020

NOTICE TO _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY ANDREW P. CAMPBELL

WHOSE ADDRESS IS 420 20th Street North Suite 2000, BIRMINGHAM, AL 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of      WILLIAM M. WAKEFIELD

pursuant to the Alabama Rules of the Civil Procedure

Date   3/12/2014 3:25:42 PM        /s/ ELI HENDERSON

Clerk/Register

25 WEST 11TH STREEt

ANNISTON, AL 36201

☑ Certified Mail is hereby requested        /s/ ANDREW P. CAMPBELL

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

(Date)

_____        _____        _____

Date        Server's Signature        Address of Server

_____        _____        _____

Type of Server        Server's Printed Name        _____

Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>11-CV-2014-900142.00 |
|---|---|---|

IN THE CIRCUIT COURT OF CALHOUN COUNTY

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL

NOTICE TO   JOHN W. GORDON, 1212 QUINTARD AVENUE, ANNISTON, AL 36201

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY ANDREW P. CAMPBELL

WHOSE ADDRESS IS 420 20th Street North Suite 2000, BIRMINGHAM, AL 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of   WILLIAM M. WAKEFIELD
pursuant to the Alabama Rules of the Civil Procedure

Date   3/12/2014 3:25:42 PM      /s/ ELI HENDERSON

Clerk/Register

25 WEST 11TH STREEt

ANNISTON, AL 36201

☑ Certified Mail is hereby requested      /s/ ANDREW P. CAMPBELL

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on

☐ I certify that I personally delivered a copy of the Summons and Complaint to

_____ in _____ County, Alabama on _____
(Date)

_____          _____          _____
Date                                Server's Signature                  Address of Server

_____          _____          _____
Type of Server                      Server's Printed Name               _____
                                                                        Phone Number of Server



AlaFile E-Notice

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To:  TRUST SUSAN CRINNIAN (PRO SE)
C/O SUSAN CRINNIAN
1727 E. SELDON LANE
PHOENIX, AZ 85020-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was FILED on 3/20/2014 9:03:00 AM

**D001 WAKEFIELD'S INC.**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: WAKEFIELD DEBORAH ANN]

Notice Date:    3/20/2014 9:03:00 AM

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov

**STATE OF ALABAMA**
Unified Judicial System

Revised 3/5/08

11-CALHOUN

☐ District Court  ☑ Circuit Court

ELECTRONICALLY FILED
3/20/2014 9:03 AM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

Cas[...]

CV20[...]

**CIVIL MOTION COVER SHEET**

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL

*Name of Filing Party:* D001 - WAKEFIELD'S INC.

*Name, Address, and Telephone No. of Attorney or Party. If Not Represented.*
DEBORAH A. WAKEFIELD
POST OFFICE BOX 661228
BIRMINGHAM, AL 35266

*Attorney Bar No.:* PAY010

☐ Oral Arguments Requested

## TYPE OF MOTION

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| | ☐ Consolidation |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during Trial) |
| ☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Disburse Funds |
| | ☐ Extension of Time |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ In Limine |
| | ☐ Joinder |
| ☐ Motion to Intervene ($297.00) | ☐ More Definite Statement |
| | ☑ Motion to Dismiss pursuant to Rule 12(b) |
| ☐ Other _____ | ☐ New Trial |
| pursuant to Rule ($50.00) | ☐ Objection of Exemptions Claimed |
| | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| ☐ Local Court Costs $ _____ | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other _____ |
| | pursuant to Rule (Subject to Filing Fee) |

☐ Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf on an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees)

Date:
3/20/2014 9:02:12 AM

Signature of Attorney or Party:
/s/ DEBORAH A. WAKEFIELD

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.

**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.



ELECTRONICALLY FILED
3/20/2014 9:03 AM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

### IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD,                    )
                                         )
      Plaintiff,                         )
                                         )
vs.                                      )
                                         )  CIVIL ACTION NO. : 11-CV-2014-900142
WAKEFIELD'S INC., SUSAN WAKEFIELD        )
CRINNIAN, ET AL.,                        )
                                         )
      Defendants.                        )
                                         )
                                         )

---

## MOTION TO DISMISS

---

**COMES NOW WAKEFIELD'S , INC., a** Defendant in the the above-styled cause, and moves to dismiss this case based on the following:

    1.    The Defendant, Wakefield's Inc., avers the Complaint fails to state a claim against this Defendant.

**WHEREFORE, THE PREMISES CONSIDERED**, the Defendant prays that this case will be dismissed.

S/Deborah Ann Wakefield
DEBORAH ANN WAKEFIELD
Attorney for Defendant
Wakefield's Inc.


**OF COUNSEL:**

PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
P. O. Box 661228 (35266-1228)
Birmingham, AL 35216
205-326-6600


## CERTIFICATE OF SERVICE

I hereby certify that I have on this 20th day of March, 2014, served a copy of the foregoing pleading on counsel for all parties to this proceeding by E-file and/or mailing same in the U.S. Mail properly addressed and first class postage prepaid to:

Andrew P. Campbell
Stephen D. Wadsworth
Leitman, Siegal, Payne & Campbell, P.C.
420 20th Street North, Suite 2000
Birmingham, Alabama 35203

Susan Wakefield Crinnian
1727 E. Seldon Lane
Phoenix, AZ 85020

The Susan Crinnian Trust
1727 E. Seldon Lane
Phoenix, AZ 85020

John W. Gordan
1212 Quintard Avenue
Anniston, AL 36201


S/Deborah Ann Wakefield
OF COUNSEL

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JOHN W. GORDON

1212 QUINTARD AVENUE

ANNISTON, AL 36201

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _Deborah Bolton_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

_Deborah Bolton_   _3/19/14_

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☑ Certified Mail®   ☐ Priority Mail Express™
   ☐ Registered   ☑ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number
   (Transfer from service label)

7013 2250 0001 3297 7355

PS Form 3811, July 2013   Domestic Return Receipt   CV 2014-900142



AlaFile E-Notice

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To: CAMPBELL ANDREW PHILLIP
acampbell@lspclaw.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was served on 3/19/2014

D004 GORDON JOHN W.

CERTIFIED MAIL

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov



**AlaFile E-Notice**

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To:  WADSWORTH STEPHEN DOUGLAS
Swadsworth@lspclaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was served on 3/19/2014

D004 GORDON JOHN W.
CERTIFIED MAIL

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov



AlaFile E-Notice

ELECTRONICALLY FILED
3/27/2014 12:52 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK



11-CV-2014-900142.00

To:   ANDREW P. CAMPBELL
       acampbell@lspclaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following complaint was FILED on 3/12/2014 3:25:42 PM

Notice Date:     3/12/2014 3:25:42 PM

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov

ELECTRONICALLY FILED
3/12/2014 3:25 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | COVER SHEET<br>CIRCUIT COURT - CIVIL CASE<br>(Not For Domestic Relations Cases) | Case Number<br>11-CV-201<br><br>Date of Filing:<br>03/12/2014 |
|---|---|---|

## GENERAL INFORMATION

IN THE CIRCUIT OF CALHOUN COUNTY, ALABAMA
WILLIAM M. WAKEFIELD v. WAKEFIELD'S INC. ET AL

First Plaintiff:  ☐ Business  ☑ Individual  ☐ Government  ☐ Other

First Defendant:  ☑ Business  ☐ Individual  ☐ Government  ☐ Other

## NATURE OF SUIT:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonnes
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP-Contempt of Court
☐ CONT-Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND- Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD-Eviction Appeal/Unlawfyul Detainer
☐ FORJ-Foreign Judgment
☐ FORF-Fruits of Crime Forfeiture
☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB-Protection From Abuse
☐ FELA-Railroad/Seaman (FELA)
☐ RPRO-Real Property
☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP-Workers' Compensation
☑ CVXX-Miscellaneous Circuit Civil Case

ORIGIN:  F ☑ INITIAL FILING       A ☐ APPEAL FROM DISTRICT COURT       O ☐ OTHER

R ☐ REMANDED       T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT       _____

HAS JURY TRIAL BEEN DEMANDED?  ☑ Yes  ☐ No

RELIEF REQUESTED:       ☐ MONETARY AWARD REQUESTED  ☑ NO MONETARY AWARD REQUESTED

ATTORNEY CODE:   CAM006       3/12/2014 3:25:40 PM       /s/ ANDREW P. CAMPBELL

MEDIATION REQUESTED:       ☐ Yes  ☑ No  ☐ Undecided



ELECTRONICALLY FILED
9/12/2014 3:25 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY ALABAMA

| | |
|---|---|
| WILLIAM M. WAKEFIELD | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No.:** |
| | ) |
| WAKEFIELD'S INC., SUSAN WAKEFIELD | ) |
| CRINNIAN, THE SUSAN CRINNIAN TRUST, | ) |
| and JOHN W. GORDON, AS A NECESSARY | ) |
| PARTY, | ) |
| | ) |
|       **Defendants.** | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff William M. Wakefield ("Wakefield") hereby files this Complaint for

Declaratory Judgment pursuant to *Alabama Rules of Civil Procedure* 7 and 8 as well as Alabama

Code § 6–6–220 *et seq.*  Mr. Wakefield is the majority shareholder and president of Wakefield's

Inc., a company based in Anniston, Alabama.  Mr. Wakefield has been repeatedly accused of

violating legal duties owed the company and a minority shareholder by his sister, Susan

Wakefield Crinnian and the Susan Crinnian Trust, a minority shareholder.  Wakefield is entitled

to a declaratory judgment affirming that his actions comply with his duties set forth in the

Corporate Bylaws and Articles of Incorporation and his fiduciary duties owed to all shareholders,

including the Susan Crinnian Trust.

### <u>Parties</u>

1.    Plaintiff Wakefield is an adult resident of Calhoun County, Alabama.  Wakefield

is the majority shareholder and president of Defendant Wakefield's Inc.

2.      Defendant Wakefield's Inc., (the "Company") is a corporation organized under the laws of Florida with its principal place of business in Anniston, Alabama.  For many years, the Company has successfully operated a chain of stores in Alabama which sell women's and men's apparel and goods at retail.

3.      Defendant Susan Wakefield Crinnian ("Crinnian") is an adult resident of Arizona.

4.      Defendant Susan Crinnian Trust ("Trust") is a trust organized under the laws of a state other than Alabama and is in the state of Arizona.

5.      John W. Gordon is an adult resident citizen of Calhoun County, Alabama.

## Jurisdiction

6.      Venue appropriately lies in this Court pursuant to Ala. Code §§ 6–3–2 and 6–3–7 because the Company's principal place of business is in Calhoun County, Alabama, for many years, and all of the events or omissions giving rise to the claim occurred in Calhoun County.

7.      This Court has jurisdiction over these claims pursuant to Alabama Constitution Article VI, § 142 and Alabama Code § 12–11–30 because the matter in controversy exceeds $10,000.  Plaintiff avers that this justiciable controversy is harming the Corporation and the Court should determine and declare the parties' rights.

## Statement of Facts

8.      The Company was founded many years ago by Martin Wakefield, the father of Plaintiff and Defendant Crinnian.  The Company is a closely-held family business with no active or ready market for Company stock other than that established by its Directors for redemption. The Company is governed by the Corporate Bylaws and Articles of Incorporation attached hereto as Exhibit A.

2

9.      For many years, Plaintiff Wakefield has managed the day-to-day operations of the Company as President and Chief Executive Officer.  Under his management, the Company has been properly managed and has achieved profits for all the shareholders, including the Trust. The Board of the Company has distributed substantial dividends when it has determined that the Company was able to do so.  For many years, the Company paid Defendant Crinnian a salary and provided group health insurance to her even though she performed absolutely no work for the Company.  In 2013, the Company ended this practice for good business reasons.

10.      For many years, Defendant Crinnian has complained on numerous occasions about alleged mismanagement of the Company and attacked Wakefield's management decisions. This carried on through a serious of verbal attacks and criticisms over the years notwithstanding the fact she was receiving substantial dividends from the Company, salary, and benefits even though she was performing no work or labor for the Company.  In contrast to Crinnian's criticism, the Company has been maintained as a stable, profitable business despite the growing competitive disadvantages posed by other local merchants and internet marketing.  Yet Crinnian increasingly has been a destructive force on the Board advocating policies such as a distress sale of the business and attacking other shareholders.  Because of her disruptive behavior and other acts, Crinnian was not reelected to the Board in 2013.

11.      Martin Wakefield had three children, Plaintiff Bill Wakefield, Defendant Susan Wakefield Crinnian, and Nannette Wakefield White.  Martin Wakefield died in 2010.

12.      Of the children, only Wakefield is actively involved in the day-to-day operations of the Company.  Mrs. White worked for many years as a dedicated officer and employee of Wakefield's, commuting daily from Birmingham to Anniston.  For a while, Mrs. White and Mrs. Crinnian received salary and benefits from the Company.  In May 2012, Mrs. White sold her 404

3

shares of Company stock back to the Company.  Separate from this, she agreed to continue work as a consultant, driving regularly from Birmingham to Anniston to fulfill her responsibilities. The Company purchased Mrs. White's interest at 50% book value.  This redemption increased the value of the Trust's shares.  The Trust was offered the opportunity to buy shares at 50% of book value, but declined.  In September 2013, Mrs. White resigned from the board of directors.

13.     For many years, at the original direction of Martin Wakefield, the Company has maintained a policy of purchasing shares from shareholders who desired to sell at a price equal to 50% of book value and selling shares at the same price.  This policy created a market for any shareholder to sell his or her shares.  The Company's policy and Bylaws had developed provisions for preemptive rights, that is, the right to buy an equal amount of shares as the purchasing shareholder and thereby not be diluted in percentage of ownership.

14.     In 2013, 125 shares of Company stock were purchased by John Gordon, a valuable and active member of the Company's board of directors consistent with Company policy.  Gordon is a member of management who assists Wakefield in running the day-to-day operations of the Company.  Mr. Gordon purchased his shares of company stock for 50% of book value.  Mr. Gordon holds the option to buy an additional 125 shares.  Mrs. Crinnian opposed the sale of stock to Mr. Gordon.  The Board offered Crinnian the opportunity again to purchase her pro-rata amount of shares at 50% of book value.  The Trust declined and alleged the Gordon sale was improper and illegal.

15.     Plaintiff Wakefield also gifted one share of stock to his wife, Deborah Ann Wakefield, who has been actively involved in the Company for many years.

16.     As of today, Mr. Wakefield owns 965 shares of Company stock, Deborah Ann Wakefield owns 1 share, the Susan Crinnian Trust ("Trust") owns 230 shares, which were gifted to the Trust by Crinnian, and Mr. Gordon owns 125 shares.

17.     On February 26, 2014, attorneys representing Mrs. Crinnian and the Susan Crinnian Trust wrote Mr. Wakefield a lengthy letter, attached hereto at Exhibit B, and accused him of engaging in historical oppressive behavior and violating numerous fiduciary and legal duties he owes to the Company, Crinnian, and the Susan Crinnian Trust as minority shareholders of the Company.  This followed similar accusations by Defendant Crinnian over the years of mismanagement and breach of fiduciary duties.  Mr. Wakefield denies that he has acted wrongfully or has in any way violated the fiduciary rights or reasonable expectations of the Company or its shareholders as defined by the Articles of Incorporation or Corporate Bylaws. However, the continued attacks of the Trust and Crinnian require a determination judicially of the rights of the parties.

## Claim for Declaratory Relief

18.     Under the Alabama Declaratory Judgment Act, any individual interested in a written contract or other writing "may have determined any question of construction or validity arising under the instrument" determined by a declaratory judgment action.  Ala. Code § 6-6-223.

19.     The rights of the various parties to this litigation are governed by the Company's Articles of Incorporation and Corporate Bylaws and Alabama law.  Crinnian has continuously and wrongfully accused Mr. Wakefield of misusing his power as majority shareholder to devalue the value of the entity and deny her expectations as a minority shareholder.  The propriety or impropriety of these actions will be determined by the terms of the Corporate Bylaws, Articles of

5

Incorporation, and Alabama law.  Among these grievances is the removal of Crinnian from the Board of Directors and the alleged purchase of shares of White, notwithstanding the Company's longstanding policy to purchase and sell shares at 50% of book value.

20.     Further, Crinnian has alleged that Mr. Wakefield has violated her expectations as a minority shareholder by discontinuing her Company salary and benefits and terminating her from the Company's Board of Directors.  It is clear from the Company's records, however, that Crinnian is not a shareholder and thus, cannot have her reasonable expectations as a shareholder violated.

21.     Mrs. Crinnian has also alleged that Wakefield's action relating to the sale of stock to Defendant Gordon and gift of a share to Deborah Ann Wakefield constituted a breach of duties owed by him to the Corporation and to the Trust.  Crinnian also alleges that in 2012 and 2013, Wakefield continuously has undertaken other acts to harm the Company and the Trust's interests.  Indeed, Wakefield actually has acted in the Company's best interest and in accordance with the Business Judgment Rule.

22.     There is a justiciable controversy presented to this Court over Plaintiff's actions and whether they are consistent with the Bylaws, Articles of Incorporation, Alabama law, fiduciary duty owed to all shareholders, the Business Judgment Rule, and duties owed to the Corporation.  For many years, Crinnian has taken legal positions that Plaintiff's actions violated his duties to the Corporation.  This historical pattern has culminated in Crinnian and Trust's counsel asserting these legal positions and that Wakefield's position is adverse to the Corporation and its interests.  *See* Exhibit C.  By these threats, Crinnian has sought to effect a "reverse squeeze out" to force Plaintiff and the Corporation, by threats of litigation, to purchase her shares for an excessive and exorbitant price in violation of the Company's policies.

23.     Wakefield seeks a determination by this Court whether his acts, each taken as President and Chief Executive Officer of the Company, are legal and in compliance with his obligations, both legal and fiduciary.  Plaintiff is entitled to a judgment in his favor as to all parties and transactions and thereof.

WHEREFORE, premises considered, Plaintiff Wakefield seeks a Declaratory Judgment against Defendants Wakefield's Inc., Susan Crinnian, the Susan Crinnian Trust, and John Gordon:

a.  That in all transactions with John Gordon, Wakefield has acted consistently with the Articles of Incorporation, Bylaws, and his duties owed to the Company and its shareholders;

b.  That in all transactions with John Gordon, Wakefield has protected the interests and rights of the Trust as a minority shareholder, and all other minority shareholders;

c.  That in his actions as President and majority shareholder, Wakefield has acted in accordance with his legal and fiduciary duties set forth in the Articles of Incorporation, Bylaws, and Alabama law;

d.  That Wakefield's actions are consistent with and protected by the Business Judgment Rule; and

e.  For such other, additional relief to which Plaintiff may be entitled, premises considered.

## JURY DEMAND

Plaintiff requests a jury for all issues so triable.

Respectfully submitted,


  /s   Andrew P. Campbell
Attorneys for Plaintiff

7

**OF COUNSEL:**
Andrew P. Campbell (CAM006)
Stephen D. Wadsworth (WAD025)
LEITMAN, SIEGAL, PAYNE & CAMPBELL, P.C.
420 20th Street North, Suite 2000
Birmingham, AL 35203
Telephone:    (205) 251-5900
Facsimile:    (205) 323-2098
acampbell@lspclaw.com
swadsworth@lspclaw.com


**PLEASE SERVE THE FOLLOWING DEFENDANTS BY CERTIFIED MAIL:**

**WAKEFIELD'S INC.**
c/o William M. Wakefield
1212 Quintard Avenue
Anniston, AL 36201

**SUSAN WAKEFIELD CRINNIAN**
1727 E. Seldon Lane
Phoenix, AZ 85020

**THE SUSAN CRINNIAN TRUST**
c/o Susan Wakefield Crinnian
1727 E. Seldon Lane
Phoenix, AZ 85020

**John W. Gordon**
1212 Quintard Avenue
Anniston, AL 36201



ELECTRONICALLY FILED
3/12/2014 3:25 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

# Exhibit

# A

*Organized April 22, 1963.*

## ARTICLES OF INCORPORATION

### OF

### WAKEFIELD'S, INC.

..........................

The undersigned persons do hereby associate themselves together for the purpose of becoming a corporation of and under the Laws of the State of Florida, by and under the provisions of the Statutes of said State regulating the formation of corporations for profit.

### ARTICLE I - NAME.

The name of this Corporation shall be WAKEFIELD'S, INC.

### ARTICLE II - NATURE OF BUSINESS.

The general nature of the business to be transacted by this Corporation shall be as follows:

1. To carry on the business of establishing and conducting a general mercantile dry goods business and general department store business, including the buying, leasing, manufacturing, selling, and otherwise dealing in merchandise, hard and soft goods, wares and commodities of all kinds and descriptions; and to do any and all acts and things necessary, convenient, expedient, ancillary or in aid to the accomplishment of the foregoing.

2. To purchase, acquire, hold, improve, sell, convey, assign, lease, mortgage, encumber, hire and deal in real and personal property of every name and nature.

3. To buy, lease, build, erect, equip, operate, maintain and sell buildings, including but not limited to office buildings, store buildings and warehouses and stores of all kinds and nature.

4.   To carry on and conduct a general real estate business, both as broker and owner, selling, buying, leasing and renting real estate.

5.   To purchase, subscribe for, or otherwise acquire and own, hold, use, sell, assign, transfer, mortgage, pledge, exchange, or otherwise dispose of real and personal property of every kind and description, including shares of stock, bonds, debentures, notes, evidences of indebtedness, and other securities, contracts, or obligations of any corporation or corporations, association or associations, domestic or foreign, and to pay therefor in whole or in part in cash or by exchanging therefor stocks, bonds, or other evidences of indebtedness or securities of this or any other corporation, and while the owner or holder of any such real or personal property, stocks, bonds, debentures, notes, evidences of indebtedness or other securities, contracts, or obligations, to receive, collect, and dispose of the interest, dividends and income arising from such property, and dispose of the interest, dividends and income arising from such property, and to possess and exercise in respect thereof, all the rights, powers and privileges of ownership, including all voting powers on any stocks so owned.

6.   To transport, carry and move by any and all means of transportation, on land, sea and in the air, any and all things deemed useful or necessary in carrying on the business of this Corporation.

7.   To own, lease, use, experiment in, buy, sell and develop patents and patent rights of all kinds and for items, objects, products, mechanisms and goods, and to enter into contracts for the purchase, sale, disposition and traffic in same, both as principal and as agent.

-2-

8. To develop inventions of any and every kind, and to engage in scientific research and experiment of any and every kind.

9. To buy, sell and otherwise acquire, hold and dispose of franchises and licenses for the use of trade names, trade marks, patents and copyrights and for the use of different plans and processes in carrying on the business hereinabove indicated.

10. To manufacture, purchase or otherwise acquire, and to own, mortgage, pledge, sell, assign, transfer, or otherwise dispose of, and to invest in, trade in, deal in and with, goods, wares, merchandise, real and personal property, and services of every class, kind, and description; except that it is not to conduct a banking, safe deposit, trust, insurance, surety, express, railroad, canal, telegraph, telephone or cemetery company, a building and loan association, fraternal benefit society, state fair or exposition.

11. To carry on such other business as may be necessary, convenient, or desirable to accomplish the above purposes, and to do all other things incidental thereto which are not forbidden by law or by these Articles of Incorporation.

12. To do all acts and things necessary, convenient, or expedient to carry out the purposes for which this Corporation is formed.

13. Without, in any particular, limiting any of the objects or purposes or powers of this Corporation, it is hereby expressly declared and provided that this Corporation shall have power to do all acts or things necessary, incidental or

convenient to do, or calculated directly or indirectly, to promote the interests of the Corporation, or enhance the value or render profitable any of its property or rights; and in carrying on its business, or for the purpose of obtaining or furthering any of its objects, to do any and all acts and things and to exercise any and all other powers which a natural person could do and exercise and which now or hereafter may be authorized by law.

14. The foregoing purposes shall, except where otherwise expressed, be in no way limited or restricted by reference to, or inference from, the terms of any other clause of this or any other article of these Articles of Incorporation, and shall be regarded as independent, and construed as powers as well as purposes, notwithstanding the expressed enumeration of powers elsewhere in these Articles.

## ARTICLE III - CAPITAL STOCK.

The maximum shares of stock that this Corporation is authorized to have outstanding at any one time is Three Thousand Five Hundred Shares (3,500) of common stock having a nominal or par value of One Hundred Dollars ($100.00) per share.

## ARTICLE IV - INITIAL CAPITAL.

The amount of capital with which this Corporation will begin business is at least One Thousand Dollars ($1,000.00).

## ARTICLE V - TERM OF EXISTENCE.

This Corporation shall have perpetual existence.

## ARTICLE VI - ADDRESS.

The initial post office address of the principal office of this Corporation in the State of Florida is 313 Radio

-4-

Building, 100 East Las Olas Boulevard, Fort Lauderdale, Florida. The Board of Directors may, from time to time, move the principal office to any other address in Florida. This Corporation shall, however, have the right and power to transact business and to establish offices and agencies at such other places, both within and without the State of Florida, as its Directors may authorize.

### ARTICLE VII - NUMBER OF DIRECTORS.

The Directors of this Corporation shall not be less than three (3) nor more than seven (7) in number.

### ARTICLE VIII - INITIAL DIRECTORS.

The names and post office addresses of the first Board of Directors of this Corporation, all of whom shall hold office for the first year or until their successors are chosen, are:

| NAME | ADDRESS |
|------|---------|
| MARTIN L. WAKEFIELD | 804 Commercial National Bank Bldg. Anniston, Alabama |
| WILLIAM J. WAKEFIELD | 804 Commercial National Bank Bldg. Anniston, Alabama |
| CHARLES S. DOSTER, JR. | 804 Commercial National Bank Bldg. Anniston, Alabama |

### ARTICLE IX - SUBSCRIBERS.

The name and post office address of each Subscriber of these Articles of Incorporation is as follows:

| | |
|------|---------|
| CURTIN R. COLEMAN | P. O. Box 1037 Fort Lauderdale, Florida |
| WILLIAM F. LEONARD | P. O. Box 1037 Fort Lauderdale, Florida |
| WILLIAM A. MORSE | P. O. Box 1037 Fort Lauderdale, Florida. |

### ARTICLE X - POWERS.

This Corporation shall be authorized to exercise and

-5-

enjoy all of the powers, rights and privileges granted to or
conferred upon, corporations of a similar character by the
Laws of the State of Florida now or hereafter in force, and
the enumeration of powers herein shall not be deemed to
exclude or waive any powers, rights or privileges so
granted or conferred except where the same may be expressly
restricted or modified in these Articles. This Corporation
shall have the following specific powers, which may, where
expedient, be considered as purposes additional to those
enumerated in Article II:

    1. To purchase, acquire, hold, sell, issue, assign,
transfer, mortgage, pledge and otherwise dispose of the shares
of the capital stock, bonds, debentures, or other evidence of
indebtedness of any corporation, domestic or foreign, and while
the owner thereof, to exercise all the rights and privileges of
ownership, including the right to vote thereon, and to issue
in exchange therefor its own stock, bonds and other obligations.

    2. To acquire in any manner, exercise any and all
rights therein, including the voting of stock, and carry on,
through acquisition, merger, consolidation and combination,
all or any part of the capital stock, voting trust certificates,
assets, business and property, including the good will thereof,
of any person, firm, association, or corporation engaged in a
business similar to that authorized to be conducted by this
Corporation, or with which this Corporation is authorized
under the Laws of the State of Florida, to consolidate, or
whose capital stock this Corporation, under the Laws of the
State of Florida and the provisions of these Articles of
Incorporation, is authorized to purchase, and to undertake

LAW OFFICES, COLEMAN, LEONARD AND MORSE, FORT LAUDERDALE, FLORIDA

may only be purchased, directly or indirectly, out of earned surplus.

ARTICLE XI - PROVISIONS FOR REGULATION OF
BUSINESS AND CONDUCT OF
AFFAIRS OF THIS CORPORATION.

1.  BY-LAWS.

The Board of Directors shall have the sole power to adopt By-Laws for this Corporation, and to alter, amend, or repeal all such By-Laws.

2.  LOCATION OF STOCKHOLDERS MEETINGS.

Meetings of the holders of the common stock shall be held within or without the State of Florida at such places as, from time to time, may be designated by the Board of Directors.

3.  DIVIDENDS.

The holders of the common stock shall be entitled to receive dividends from any funds legally available for the purpose, when and as declared by the Board of Directors payable on a per share basis.

4.  STOCKHOLDER VOTES ON CERTAIN MATTERS.

The holders of the common stock shall be entitled to vote on any merger, consolidation, or sale of assets of this Corporation as provided by law.

5.  TRANSACTIONS INVOLVING DIRECTORS.

In the absence of fraud, no contract or other trans-action between this Corporation and any other person, firm, association or corporation shall be wholly or partially invalidated or otherwise affected by the fact that one or more Directors of this Corporation are, or become, directors or officers of such other person, firm, association or

-9-

corporation, or are pecuniarily or otherwise interested in

such contract or transaction, provided that said fact of

membership or interest shall be known  or fully disclosed

to a majority of the Board of Directors of this Corporation

throughout the duration of such contract or transaction, and

any such Director of this corporation may be counted in

determining the existence of a quorum at any meeting at

which said contract or transaction shall be authorized or

considered, and such Director shall have full power to vote

on the contract or transaction which shall be authorized or

considered.

6.   RATIFICATION OF TRANSACTIONS.

Any contract or transaction of this Corporation or of

the Board of Directors which shall be ratified at any

meeting by a majority of a quorum of the holders of the

common stock outstanding and entitled to vote shall, so far

as permitted by law, be as valid as though ratified by every

holder of the common stock of this Corporation.

7.   CONSIDERATION FOR SHARES.

The common stock for this Corporation shall be issued

for such consideration, but not less than the par value

thereof, as shall be fixed from time to time by the Board of

Directors.  In the absence of fraud, the judgment of the

Directors as to the value of any property or services received

in full or partial payment for shares shall be conclusive.

When shares are issued upon payment of the consideration fixed

by the Board of Directors, such shares shall be taken to be

fully paid stock and shall be non-assessable.

-10-

8. OFFICERS.

This Corporation shall have a President, who shall be a Director, a Vice President, a Secretary and a Treasurer, and such other and additional officers as may be designated by the Board of Directors. All officers shall be elected by the Board of Directors and shall serve until their successors are chosen and qualify. Any person may hold two or more offices, except that the President may not also be the Secretary or Assistant Secretary. It shall not be necessary that a person be a Director in order to be elected as an Officer, nor shall it be necessary that a person be a stockholder in order that he be elected a Director.

9. SPECIFIC POWERS OF THE BOARD OF DIRECTORS.

In addition to any powers conferred upon the Board of Directors elsewhere in these Articles and by the Laws of the State of Florida, the Board of Directors is expressly authorized and empowered:

(a) To determine whether any and, if so, what part of the earned surplus of the Corporation shall be paid in dividends to the stockholders, and to direct and determine other use and disposition of any such earned surplus;

(b) To fix, from time to time, the amount of the profits of the Corporation to be reserved as working capital or for any other lawful purpose;

(c) To establish bonus, profit-sharing, stock option, or other types of incentive compensation plans for the employees, including Officers and Directors, of the Corporation, and to fix the amount of profits to be shared or

-11-

distributed, and to determine the persons to participate
in any such plans and the amount of their respective
participations.

10.   PROXY VOTING BY DIRECTORS.

Any Director absent from a meeting may be represented
by any other Director or Stockholder, who may cast the vote
of the absent Director according to the written instructions,
general or specific, of the absent Director.

11.   RESTRICTIONS ON TRANSFER OF STOCK.

(a)  No stockholder of this Corporation may, at any
time, sell, assign, transfer, mortgage, pledge, hypothecate,
or transfer on the books of the Corporation, any or all of
the shares of stock  of this Corporation held by him without
first offering said stock for sale to this Corporation.  In
the event any stockholder so offers any or all of his stock
for sale and the Corporation, after twenty (20) days time,
refuses or declines to purchase it, then the stockholder may
sell said stock to any person or corporation who is willing
to buy said stock.  This restriction on the transfer of stock
shall be written into each share of stock issued by this
Corporation by reference thereon to this Article of these
Articles of Incorporation.

(b)  Any such stock as is purchased, as aforesaid,
by this Corporation, shall be divided or assigned by the
then Secretary of this Corporation to any one or more of the
remaining stockholders of this Corporation, each their
respective pro rata share, on the payment of such stockholders
of the proportionate amount of the purchase price thereof,
and upon twenty (20) days notice to all such remaining
stockholders, by registered mail, return receipt requested,

sent to each of them to the address appearing on the
registry books of this Corporation; but, in the event that
any such remaining stockholder declines or fails, within
said twenty (20) days, to exercise the aforedescribed right
to acquire his proportionate share of such purchased stock,
then and thereupon, the other remaining stockholders shall
have the right to acquire such portion of such stock; but,
in the event that any of the aforedescribed purchased stock
is not taken and purchased by any or all of the remaining
stockholders, then and thereupon the remaining stock hereto-
fore acquired by this Corporation shall become its treasury
stock, to be subsequently held or reissued in any manner
and under such terms as the Board of Directors may determine.

(c)  All of the conditions and covenants of this
Section 11 of Article XI shall bind each of the incorporators
hereto, their heirs, executors, administrators and assigns
and also any receiver or trustee in bankruptcy or insolvency,
except as rejected by order or authorization of Court.

(d)  Notwithstanding the foregoing restrictions
on the transfer of stock, the Corporation shall have the power
to include in its By-Laws any regulatory or restrictive provi-
sions relating to the proposed sale, transfer or other disposi-
tion of any of its outstanding stock by any of its stockholders
and such provisions may be either consistent with or incon-
sistent with the foregoing provisions set forth in Sections
(a) and (b) of this Section 11 of Article XI.  The manner and
form, as well as all revelant terms, conditions and details
hereof shall be determined by the stockholders of this Cor-
poration; provided, however, that no such regulatory or res-

-13-

...ive provision shall affect the rights of third parties without actual knowledge thereof, unless such provision shall be plainly written upon the certificate evidencing the ownership of said stock.

ARTICLE XII - AMENDMENTS.

This Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation in the manner, now or hereinafter prescribed by statute, and all rights conferred on stockholders herein are granted subject to this reservation.

We, the undersigned, being all of the original Subscribers and Incorporators of the foregoing Corporation, do hereby certify that the foregoing constitutes the proposed Articles of Incorporation of WAKEFIELD'S, INC., and we hereby declare and certify that the facts herein stated are true.

_____ (SEAL)
CURTIN R. COLEMAN

_____ (SEAL)
WILLIAM F. LEONARD

_____ (SEAL)
WILLIAM A. MORSE

-14-

STATE OF FLORIDA

COUNTY OF BROWARD

I HEREBY CERTIFY that on this day in the next above named State and County, before me, an officer duly authorized and acting, personally appeared CURTIN R. COLEMAN, WILLIAM F. LEONARD and WILLIAM A. MORSE, to me well known and known to me to be the individuals described in and who executed the foregoing instrument, and acknowledged then and therefbefore me that they executed said instrument for the purposes and reasons set out therein.

WITNESS my hand and official seal this ___18th___ day of April, A. D. 1963.

Notary Public

My Commission Expires:

Notary Public, State of Florida at Large
My commission expires Feb. 26, 1964
Bonded by Mass. Bonding & Insurance Co.

*Adopted 6/25/94*

# BYLAWS

## ARTICLE I.

### Name and Location

Section 1. <u>Name</u>. The name of this corporation shall be WAKEFIELD'S, INC.

Section 2. <u>Principal Office</u>. The principal office of the corporation shall be 1212 Quintard Avenue, Anniston, Alabama 36201. Its principal office in the State of Florida shall be located at 1200 South Pine Island Rd., Plantation, Florida 33324.

Section 3. <u>Other Offices</u>. Other offices for the transaction of business shall be located at such places both within and without the State of Florida as the Board of Directors may from time to time determine.

## ARTICLE II.

### Capital Stock.

Section 1. <u>Amount</u>. The maximum shares of stock that this corporation is authorized to have outstanding at any one time is 3,500 shares of common stock having a nominal or par value of $100.00 per share.

Section 2. <u>Certificate</u>. All certificates of stock shall be signed by the Chairman of the Board or President and by the Secretary or Assistant Secretary. (Revised 8/14/93.)

Section 3. <u>Treasury Stock</u>. Treasury Stock may be held by the corporation subject to the disposal of the Board of Directors and shall neither vote nor participate in dividends.

Section 4. <u>Lien on Shares</u>. The corporation shall have a first lien on all the

1

shares of its capital stock and upon all dividends declared upon the same for any indebtedness of the respective holders thereof to the corporation.

Section 5.  <u>Transfers</u>.  Transfers of stock shall be made only on the books of the corporation; and the old certificate, properly endorsed, shall be surrendered and cancelled before a new certificate is issued.  The stock books of the corporation shall be closed against transfers for a period of ten days before the day of payment of a dividend and for ten days before each annual meeting of the stockholders.

Section 6.  <u>Restriction on Transfers</u>.  Any sale, assignment, transfer, mortgage, pledge or hypothecation of the shares of capital stock of this corporation shall be subject to the restrictions on same set forth in detail in Article XI, Section 11 of the Articles of Incorporation of Wakefield's, Inc., filed in the Office of the Secretary of State of Florida on April 22, 1962.  There shall be typed or printed on each stock certificate a clear reference to such transfer restrictions.

Section 6 (a). Notwithstanding the provisions of Section 6 of the Bylaws of this corporation and notwithstanding the provisions of Article XI, Section 11, or otherwise of the Articles of Incorporation of Wakefield's, Inc., the restrictions on the transfers of the capital stock of this corporation shall not be applicable to any gift of such shares of capital stock, provided that such gift shall be to a person kin by affinity or consanguinity to the donor within the fourth degree.

All prior gifts heretofore made as permitted by this exception are hereby ratified and confirmed. (Added June 8, 1985)

Section 7.  <u>Lost, Defaced or Destroyed Certificates</u>.  In the case of the loss,

2

defacement or destruction of a certificate held by a stockholder, the fact of such loss, defacement or destruction shall be reported by such stockholder to the corporation with his statement verified by oath or statutory declaration as to the loss, defacement or destruction and the circumstances attending the same and with his request for the issuance of a new certificate to replace the one so lost, defaced or destroyed.  Upon the giving to the corporation of a bond or other security approved by the Board of Directors indemnifying the corporation against all loss, damage or expense to which the corporation may be put by reason of the issuing of a new certificate to the said stockholder, a new certificate may be issued to take the place of the one lost, defaced or destroyed if such issuance is ordered by the Chairman of the Board or by the President of the corporation for the time being or by the Board of Directors.  Any such new certificate shall be plainly marked "duplicate" upon its face. (Revised Aug. 14, 1993)

## ARTICLE III.

### Stockholders' Meetings

Section 1.  <u>Annual Meeting</u>.  The annual meeting of the stockholders shall be held at a time and place (within Calhoun County, Alabama or elsewhere) at a time and place to be designated by the Board of Directors.  (Note: This meeting is normally held in June of each year shortly after the CPA's annual report is available for inspection.) At such meeting, the stockholders shall elect directors to serve until their successors shall be elected and qualified.

Section 2.  <u>Special Meetings</u>.  A special meeting of the stockholders, to be held

at any time in any place, may be called at any time by the Chairman of the Board or in his absence, by the President, or by any two or more of the directors. It shall be duty of the directors, the Chairman of the Board or in his absence, the President to call such a meeting whenever so requested in writing by stockholders holding 50% or more of the capital stock. (Revised Aug 14, 1993)

Section 3. <u>Notice of Annual Meeting</u>. Notice of the time and place of all meetings shall be mailed by the Secretary, or personally delivered to each stockholder at least ten days before the date thereof unless all stockholders entitled to notice sign a waiver of notice of said meeting.

Section 4. <u>Notice of Special Meetings</u>. Notice of the time and place of all special meetings shall be mailed by the Secretary, or personally delivered to each stockholder at least seven days before the date thereof unless all stockholders entitled to notice sign a waiver of notice of said meeting.

Section 5. <u>Omission of Notice</u>. The accidental failure to give notice of any meeting or the nonreceipt of any notice by a stockholder or stockholders shall not invalidate any resolution passed or any proceedings taken at any meeting.

Section 6. <u>Presiding Officer</u>. The Chairman of the Board or, in his absence, the President, shall preside at all meetings of the stockholders. (Revised Aug. 14, 1993)

Section 7. <u>Votes</u>. At all meetings of the stockholders, each stockholder having the right to vote shall be entitled to one vote in person or by proxy for each share of stock having voting power owned by him, as evidenced by the books of the

corporation, on the date of closing the register of transfers; of if no date is fixed for closing the register or transfers, then on the date of the meetings. The manner and procedure for voting in the election of directors is covered in the next succeeding Section (Section 8 of this Article III) of these Bylaws. At all meetings of the stockholders, every question shall be determined by a majority of the votes unless otherwise specifically provided by the laws of Florida, the Articles of Incorporation of this corporation or by the Bylaws of this corporation. Voting shall be by ballot upon demand of any stockholder. Where there is more than one person registered as a stockholder in respect of any share or shares, any one of such persons may vote at any meeting either personally or by proxy in respect of such share or shares as if he were solely entitled thereto; and if more than one of such persons be present at any meeting personally or by proxy, that one of the said persons so present whose name stands first on the books of the corporation or before the other or others in the books of the corporation in respect of such share or shares shall alone be entitled to vote in respect thereof.

Section 8. <u>Votes for Directors</u>. Every stockholder shall have the right to vote in person or by proxy for the number of shares of stock owned by him for as many persons as there are directors to be elected. Cumulative voting is not authorized.

Section 9. <u>Votes by Corporations</u>. Any corporation holding stock in this corporation may cast its vote through an officer of such corporation; provided, however, that such officer may be called upon to furnish written evidence of his authority to cast such vote. Any corporation holding stock in this corporation may

5

also cast its vote by proxy or voting certificate from said corporation to any individual.

Section 10.  _Proxies_.  Votes may be given either personally or by proxy.  An instrument appointing a proxy shall be in writing under the hand of the appointer or his attorney-in-fact duly authorized in writing; or if the appointer is a corporation, either under the corporate seal or under the hand of an officer or attorney so authorized or signed on its behalf  by its duly authorized officers; an instrument appointing a proxy signed by or on behalf of a corporation need not be under seal.  A person acting as proxy need not be a stockholder.  The directors may from time to time make regulations regarding the lodging of instruments appointing a proxy at some place or places other than the place at which a meeting or adjourned meeting of stockholders is to be held and for particulars of such instruments to be cabled or telegraphed or sent in writing before the meeting or adjourned meeting to the corporation or any agent of the corporation for the purpose of receiving such particulars and providing that instruments appointing a proxy so lodged may be voted  upon as though the instruments themselves were produced at the meeting or adjourned meeting, and votes given in accordance with such regulations shall be valid and shall be counted.  Pending the making of such regulations, any officer of this corporation may, in his discretion, accept telegraphic or cable or written communication as to the authority of anyone claiming to vote on behalf of and to represent a stockholder notwithstanding that no instrument or proxy conferring such authority has been lodged with the corporation; and any votes

6

given in accordance with such telegraphic or cable or written communication accepted by such officer shall be valid and shall be counted.

Section 11.  Adjournment.   The Presiding Officer, with the consent of any meeting, may adjourn the same from time-to-time; and no notice of such adjournment need be given to the stockholders.  Any business may be brought before or dealt with at any adjourned meeting which might have been brought before or dealt with in the original meeting in accordance with the notice calling the same.

Section 12.  Quorum.  Holders of a majority of the shares issued and outstanding and entitled to vote, present in person or represented by proxy, shall be requisite and shall constitute a quorum at all meetings of the stockholders for the transaction of business except as otherwise provided by statute or by the Articles of Incorporation or Bylaws of this corporation.  The stockholders present at any meeting, though less than a quorum, may adjourn the meeting to a future time.

## ARTICLE IV.

### Directors

Section 1.  Number.  The business and property of the corporation shall be managed by a board of directors who shall be elected by the stockholders.  A director need not be a stockholder in order to hold such office. The number of Directors shall be determined from time to time by the Shareholders.

Section 2.  Term of Office.  The directors' term of office (subject to the provision, if any, of the Articles of Incorporation and Bylaws of this corporation)

7

shall be from the date of the meeting at which they are elected or appointed until the annual meeting next following or until their successors are appointed.  A person appointed to fill a vacancy in the Board shall hold office subject to the provisions aforesaid for the balance of the unexpired term of the vacating director.

Section 3.  <u>Vacancies</u>.  Any vacancy occurring in the Board of Directors from any cause may be filled by the remaining directors, although less than a quorum. Any increase in the number of directors shall be construed as creating vacancies which may be filled by the directors in the manner above provided.

Section 4.  <u>Vacation of Office</u>. The office of a director shall ipso facto be vacated (a) if he becomes bankrupt, makes an assignment for the benefit of creditors or files a petition under Chapter XI of the Bankruptcy Act; (b) if he becomes of unsound mind or is adjudicated an incompetent; or (c) if, by notice in writing to the corporation, he resigns  his office.

Section 5.  <u>Annual Meeting</u>.  The annual meeting of the directors shall be held at the location of the annual stockholders' meeting immediately after the adjournment of such stockholders' meeting.

Section 6.  <u>Special Meetings</u>.  Special meetings of the Board of Directors may be called by the  Chairman of the Board or, in his absence, the President or any two directors at any time, and the Secretary, by direction of the  Chairman of the Board or, in his absence, the President or any two directors, shall convene a meeting of directors.  Special meetings of the Board of Directors may be held at any place. (Revised Aug. 14, 1993.)

8

Section 7.  <u>Notice of Annual Meeting</u>.  Notice of the annual meeting of the Board of Directors shall be mailed to each director by the Secretary at least ten days previous to the time fixed for the annual meeting unless all of the directors entitled to notice sign a waiver of notice of such meeting.  For the first meeting of the Board of Directors at the annual stockholders' meeting or in the case of a director elected to fill a vacancy on the Board, no notice of such meeting shall be necessary to the newly-elected director or directors in order to legally constitute the meeting, provided a quorum of directors be present.

Section 8.  <u>Notice of Special Meetings</u>.  Notice of special meetings shall be delivered or mailed or telegraphed or cabled to each director not less than seven days (exclusive of the day on which the notice is delivered or mailed or telegraphed or cabled, but inclusive of the day for which notice is given) before the meeting is to take place.  Meetings of the Board of Directors may be held a any time without formal notice if all the directors are present or those absent have waived notice or have signified their consent in writing to the meeting being held in their absence. Notice of any meeting, or any irregularity in any meeting or the notice thereof may be waived by any director.

Section 9.  <u>Quorum</u>.  At all meetings of the Board of Directors, the presence of a majority of the directors shall be necessary and sufficient to constitute a quorum for the transaction of business.

Section 10.  <u>Voting</u>.  The act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board of Directors except

9

as may be otherwise specifically provided for by Florida Statutes or by the Articles of Incorporation or Bylaws of this corporation.

Section 11. <u>Remuneration</u>.  The remuneration to be paid to the directors shall be such, if any, as the Board of Directors shall from time-to-time determine, and such remuneration shall be in addition to the salary paid to any officer of the corporation who is also a member of the Board of Directors.  The directors may also, by resolution, reward special services on the corporation's behalf other than the routine work ordinarily required of a director by the corporation and confirmation of any such resolution by the stockholders shall not be required.  The directors shall also be entitled to be paid their traveling and other expenses properly incurred by them in connection with the affairs of the corporation including travel to and from Directors Meetings.

Section 12. <u>Stockholders' Approval of Contracts</u>.  The Board of Directors, in its discretion, may submit any contract, act or transaction for approval or ratification at any annual meeting of the stockholders or at any special meeting of the stockholders called for the purpose of considering the same and any contract, act or transaction that shall be approved or ratified by a resolution passed by a majority of the votes cast at any such meeting (unless any different or additional requirement is imposed by Florida Statutes or the Articles of Incorporation or Bylaws of this corporation) shall be as valid and as binding upon the corporation and upon all of the stockholders as though it had been approved or ratified by every stockholder of the corporation.

10

Section 13. <u>Protection of Directors or Officers.</u>

(a) The directors and officers for the time being of the corporation and any of them and any of their heirs, executors and administrators shall be indemnified and saved harmless out of the assets and profits of the corporation from and against all actions, costs, charges, losses, damages and expenses which they, or any of them, or any of their heirs, executors or administrators shall or may incur or sustain or, by reason of any act, done, concurred in or omitted in or about the execution of their duty or supposed duty in their respective offices except such (if any) as they shall incur or sustain by reason or through their own willful neglect or default, respectively.

(b) No director or officer for the time being of the corporation shall be liable for the acts, receipts, neglects or defaults of any other director or officer or employee or for joining in any receipt or act for conformity or for any loss, damage or expense happening to the corporation through the insufficiency or deficiency of title to any property acquired by order of the Board of Directors of the corporation for or on behalf of the corporation or for the insufficiency or deficiency of any security in or upon which any of the moneys of or belonging to the corporation shall be placed out or invested or for any loss or damage arising from the bankruptcy, insolvency or tortious act of any person, firm or corporation, including any person, firm or corporation with whom or which any moneys, securities or effects shall be lodged or deposited, or for any loss, conversion, misapplication or misappropriation of or any damage resulting from any dealings with any moneys, securities or other assets

11

belonging to the corporation or for any other loss, damage or misfortune whatever which may happen in the execution of the duties of his respective office or trust or in relation thereto unless the same shall happen by or through his own willful act or default.  The directors for the time being of the corporation shall not be under any duty or responsibility in respect of any contract, act or transaction whether or not made, done or entered into in the name or on behalf of the corporation, except such as shall have been submitted to and authorized or approved by the Board of Directors.  If any director or officer of the corporation shall be employed by or shall perform services for the corporation otherwise than as a director or officer or shall be a member of a firm or a stockholder, director or officer of a company which is employed by or performs services for the corporation, the fact of his being a director or officer of the corporation shall not disentitle such director or officer of such firm or company, as the case may be, from receiving proper remuneration for such services.

(c.)  In consideration of the agreement by the officers and directors of this corporation to serve as directors of this corporation to serve as such, Wakefield's, Inc. shall, to the extent authorized by and not prohibited by law, indemnify such officers and directors, and each of them separately or severally, against loss or expense by reason of their being made a party to any threatened, pending or completed claim, action, suit or proceeding, whether civil, criminal, administrative or investigative, including appeals (other than an action by or in the right of the corporation) by reason of the fact that such person is, or was such a director or

12

officer, or is, or was serving at the request of the corporation in any other capacity. The term "loss" as used herein includes, without limiting the generality of such terms, all expenses, including attorneys' fees, judgments, fines, amounts paid in settlement actually and reasonably incurred by such person in connection with such claim, action, suit or proceeding if such person acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interest of Wakefield's, Inc. and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.

This subsection (c) shall apply for the protection of all officers and directors of Wakefield's, Inc., including those now serving and those hereafter elected. (Added March 7, 1987.)

Section 14. <u>Indemnities to Directors and Others</u>. The directors of the corporation are hereby authorized from time-to-time to cause the corporation to give indemnities to any director or other person who has undertaken or is about to undertake any liability on behalf of the corporation or any corporation controlled by it and to secure such director or other person against loss by mortgage and charge upon the whole or any part of the real and personal property of the corporation by way of security, and any action from time-to-time taken by the directors under this section shall not require approval of or confirmation by the stockholders.

Section 15. <u>Executive Committee</u>. The Board of Directors may, by resolution, appoint members of the Board of Directors as an executive committee to manage the business of the corporation during the interim between meetings of the Board.

13

# ARTICLE V.

## Officers

Section 1. _Officers._ The Board of Directors shall annually or more frequently, as may be required, elect a Chairman of the Board, a President, one or more Vice-Presidents, a Secretary and a Treasurer. The Board of Directors may from time-to-time create and fill vacancies in such other offices as it shall deem necessary. The persons elected to fill such offices shall perform such duties as from time-to-time shall be prescribed by the Board. None of the officers except the Chairman of the Board and the President need be a member of the Board of Directors. A Chairman of the Board or a President who ceases to be a director shall cease to hold office as such as soon as his successor is elected and qualified. Any two offices may be held by the same person excepting those of (a) President and vice president, (b) Chairman of the Board or President and Secretary. A vote of the majority of the Board of Directors shall be necessary for the election or appointment of officers. (Revised Aug. 14, 1993)

Section 2. _Remuneration and Removal._ The remuneration, if any, of all officers elected or appointed by the Board shall be determined from time-to-time by resolution of the Board and the fact that any officer or employee is a director or stockholder of the corporation shall not disqualify him from receiving such remuneration as may be determined. All officers, in the absence of agreement to the contrary, shall be subject to removal by resolution of the Board at any time, with or without cause, provided that a majority of the Board shall vote in favor thereof.

Section 3. _The Chairman of the Board._ The Chairman of the Board shall be

14

the chief executive officer of the corporation; he shall, if present, preside at all meetings of stockholders and directors; he shall have general and active management of the affairs of the corporation; he shall see that all orders and resolutions of the Board are carried into effect; he shall have general superintendence and direction of all officers of the corporation and shall see that their duties are properly performed; he shall sign all instruments which require his signature and shall perform all duties incident to his office and shall have such other powers and duties as may from time-to-time be assigned to him by the Board. (Revised Aug 14, 1993)

Section 3a.  The President.  The President shall (subject to the primary authority of the Chairman of the Board and subject to the authority of the Chairman of the Board to direct the President in any matter concerning the affairs of the Company) shall have authority commensurate with and identical to that of the Chairman of the Board. In the absence of the Chairman of the Board the President shall be the Chief Executive officer of the corporation and shall have all of the powers and prerogatives of the Chairman of the Board. (Added Aug 14, 1993)

Section 4.  The Vice-President.  The Vice-President and additional Vice-Presidents, if any, in the order designated by the Board of Directors shall be vested with all powers and shall perform all the duties of the President in the absence or disability or refusal to act of the President.  The Vice-President and additional Vice-Presidents, if any, shall also have such other powers and duties, if any, as may from time-to-time be assigned to him or them by the Board of Directors.

15

Section 5.  <u>The Secretary, the Treasurer and the Comptroller</u>.  The Secretary, the Treasurer and the Comptroller (if such position is created and filled) shall perform such duties as are incident to their offices, or are properly required by them by the Board of Directors, or are assigned to them by the Articles of Incorporation or these Bylaws.  The Assistant Secretaries and Assistant Treasurer (if such positions are created and filled), in the order of their seniority, in the absence of disability or refusal to act of the Secretary or Treasurer, respectively, shall perform their respective duties and exercise the respective powers of the Secretary and the Treasurer and shall perform such other duties as may be assigned by the Board of Directors.

Section 6.  <u>Other Officers</u>.  Other subordinate officers appointed by the Board of Directors shall exercise such power and perform such duties as may be delegated to them by the resolutions appointing them, or by subsequent resolutions adopted from time-to-time.

Section 7.  <u>Absence, Disability, Etc.</u>  In case of the absence or disability of any officer of the corporation and of any person hereby authorized to act in his place during such period of absence or disability, the Board of Directors may from time-to-time delegate the powers and duties of such officers to any other officer, or any director or any other person whom it may select.

Section 8.  <u>Vacancies</u>.  If any of the officers required by these Bylaws or created by the Board of Directors pursuant to these Bylaws shall be or become vacant by reason of death, resignation, disqualification or otherwise, the directors, by

16

resolution duly passed at any meeting duly called and held, may elect or appoint an officer to fill such vacancy.

ARTICLE VI.

General Provisions.

Section 1.  Seal.  The seal, an impression of which is stamped in the margin hereof, shall be the corporate seal of this corporation.  The corporation may cause to be made one or more facsimiles of the corporate seal and may, by writing under its corporate seal, authorize any person appointed for the purpose to affix the official seal to any deed or other document to which the corporation is a party in any state, country or place.

Section 2.  Dividends.  The directors may from time-to-time, by resolution, declare dividends and pay the same out of the funds of the corporation available for the purpose.

Section 3.  Voting Shares and Securities in Other Corporations.  All of the shares or other securities carrying voting rights of any other corporation, or corporations, held from time-to-time by the corporation may be voted at any and all meetings of stockholders, bondholders, debenture holders, debenture stockholders or holders of other securities (as the case may be) of such other corporation or corporations and in such manner and by such person, or persons, as the Board of Directors of this corporation shall from time-to-time determine.  The proper signing officers of the corporation may also from time-to-time execute and deliver  for and on behalf of the corporation proxies and/or arrange for the issuance of voting

17

certificates and/or other evidence of the right to vote in such names as they may determine without the necessity of a resolution or other action by the Board.

Section 4.   Withholding Information from Stockholders.

(a)  No stockholder shall be entitled to discovery of any information respecting any details or conduct of the corporation's business which, in the opinion of the directors, would not be expedient, or in the interests of the stockholders of the corporation to communicate to the public.

(b)  The directors may from time-to-time determine whether and to what extent and at what time and place and under what conditions or regulations the accounts and books of the corporation, or any of them, shall be open to the inspection of stockholders; and no stockholder shall have any right to inspect any account, or book or document of the corporation except as conferred by statute or authorized by the Board of Directors or by resolution of the stockholders in general meeting.

Section 5.  Notices.  Any notice may be served by the corporation to any stockholder or director, either personally or by sending it through the mail in a prepaid envelope, or by telegram or cablegram or facsimile message addressed to such stockholder or director at his address or, in case of any facsimile message, the facsimile phone number as the same appears in the books of the corporation; or if no address be given therein, then to the last address of such stockholder or director known to the Secretary.  With respect to every notice sent by mail, it shall be sufficient to prove that the envelope containing the notice was properly addressed

18

and put into the post office or into a letter box.

Section 6.  Shares Registered in More than One name.  All notices with respect to any shares registered in more than one name shall be given to whichever of such persons is named first in the books of the corporation and notice so given shall be sufficient notice to all the holders of such shares.

Section 7.  Persons Becoming Entitled by Operation of Law.  Every person who, by operation of law, transfer or by any other means whatsoever, shall become entitled to any share or shares shall be bound by every notice in respect of such share or shares which were duly given to the person from whom he derives his title to such share or shares before his name and address were entered on the books of the corporation.

Section 8.  Deceased Stockholder.  Any notice or document delivered or sent by mail or left at the address of any stockholder as the same appears in the books of the corporation shall, notwithstanding that such stockholder be then deceased, and whether or not the corporation has notice of his death, be deemed to have been duly served in respect to the shares, whether held solely or with other persons by such stockholder until some other person be entered in his stead in the books of the corporation as the holder, or one of the holders, thereof; and such service shall, for all purposes, be deemed a sufficient service of such notice or document on his heirs, executors or administrators and on all persons, if any, interested with him in such shares.

Section 9.  Signature to Notices.  The signature to any notice to be given by the

19

corporation may be written, stamped, typewritten or printed, or partly written, stamped, typewritten or printed.

Section 10. _Computation of Time_  Where a given number of days' notice, or notice extending over any period, is required to be given, the day of service or mailing of the notice shall, unless it is otherwise provided, be counted in such number of days or other period.

Section 11. _Proof of Service_.  A certificate of the Secretary or other duly authorized officer of the corporation in office at the time of the making of the certificate or of the transfer officer of any transfer agent of shares of any class of the corporation as to facts in relation to the mailing or delivery of any notice to any stockholder, director or officer or publication of any notice shall be conclusive evidence thereof and shall be binding on every stockholder, director or officer of the corporation, as the case may be.

Section 12. _Checks, Drafts and Notes_.  All checks, drafts or orders for the payment of money and all notes and acceptance and bills of exchange shall be signed by such officer, or offices, or person, or persons, whether or not officer of the corporation and in such manner as the Board of Directors may from time-to-time designate.

Section 13. _Execution of Instruments._  Contracts, documents or any instruments in writing requiring the signature of the corporation may be signed by the Chairman of the Board, President or the Vice-President and the Secretary or an Assistant Secretary; and all contracts, documents and instruments in writing so

20

signed shall be binding upon the corporation without any further authorization or formality.  The Board of Directors shall have power from time-to-time, by resolution, to appoint any officer, or officers, person, or persons, on behalf of the corporation either to sign contracts, documents and instruments in writing generally or to sign specific contracts, documents or instruments in writing.  The seal of the corporation may, when required, be affixed to contracts, documents and instruments in writing, signed as aforesaid or by any officer, or officers, person, or persons, appointed as aforesaid by resolution of the Board of Directors.  If the corporation has an official seal as authorized by this bylaw, the person affixing any such seal shall, by writing under his hand on the deed or other document to which the official seal is affixed, certify the date and place of affixing the same.  The term "contracts, documents or any instruments in writing," as used herein, shall include deeds, mortgages, security agreements, hypothecations, charges, conveyances, transfers and assignments of property, real or personal, immovable or movable, agreements, releases, receipts and discharges for the payment of money or other obligations, conveyances and transfers and assignments of shares, stocks, bonds, debentures or other securities and all paper writings. (Revised Aug. 14, 1993)

Section 14.  <u>Fiscal Year</u>.  The fiscal year of the corporation shall end on that Saturday of each year which falls closest to the last day of each January. Said Saturday may fall in the month of January or in the month of February. Said fiscal year shall begin on the next succeeding day.  Wakefield's shall be on a so called 4-5-4 quarterly schedule, so that each quarter shall have two-four week months and one

21

five week month.

Section 15.  <u>Interpretation</u>.  In all bylaws of the corporation, the singular shall include the plural and the plural, the singular.  The word "person" shall include firms and corporations, and the masculine shall include the feminine.  Where reference is made in this bylaw to any statute or section thereof, such reference shall be deemed to extend and apply to any amendment to said statute or section, as the case may be.

ARTICLE VII.

PRE-INCORPORATION AGREEMENT.

Section 1.  <u>Pre-Incorporation Agreement</u>.  Pursuant to the provisions of the Pre-Incorporation Agreement between MARTIN L. WAKEFIELD and WILLIAM J. WAKEFIELD under the date of March 25, 1963, said Agreement is hereby adopted and made a part of the Bylaws of WAKEFIELD'S, INC., and the provisions thereof are incorporated herein by reference, as if set forth in haec verba.

ARTICLE VIII.

Proxy Voting by Directors.

Section 1.  <u>Proxy Voting by Directors</u>.  Pursuant to the authority prescribed in Article XI, Section 10 of the Articles of Incorporation of WAKEFIELD'S, INC., any director absent from a meeting may be represented by any other director or stockholder who may cast the vote of the absent director according to the written instructions, general or special, of the absent director.  Proxies may not be utilized to constitute a quorum where there is not a quorum physically present.

22

ARTICLE IX.

Amendments.

Section 1.  <u>Amendments</u>.  Amendments to these Bylaws may be made by a vote of a majority of the directors at any annual directors meeting, or at any special directors meeting when the proposed amendment has been set out in the notice of such meeting, or in a written waiver of notice, as provided for in these Bylaws.



ELECTRONICALLY FILED
3/12/2014 3:25 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

# Exhibit

# B

# FELLOWS LA BRIOLA LLP

*Peachtree Center*
*Suite 2300 South Tower*
*225 Peachtree Street, N.E.*
*Atlanta, Georgia 30303-1731*

Stephen T. LaBriola
slabriola@fellab.com

*Telephone (404) 586-9200*
*Facsimile (404) 586-9201*
*www.fellab.com*

Writer's Direct Dial Number
(404) 586-2020

February 26, 2014

**Via U.S. Mail and Email**

Mr. Bill Wakefield
Wakefield's Inc.
P.O. Box 400
Anniston, Alabama 36202
bwakefield@wakefields.com

Re:     Objection to sale of Wakefield's, Inc. shares to John Gordon.

Dear Mr. Wakefield,

Undersigned counsel has been retained by minority shareholder Susan Wakefield Crinnian, as Trustee of the Susan Crinnian Trust,[1] to object to the sale of Wakefield's, Inc. (the "Corporation") shares to John Gordon.  Based on the facts presented below, it appears that the sale of shares to Mr. Gordon is part of systematic approach by you, as majority shareholder, to wrongfully oppress Mrs. Crinnian, as minority shareholder.  As discussed below, through your wrongful conduct you have sought to defeat Mrs. Crinnian's reasonable expectations as a minority shareholder of the Corporation.  Due to the improper and misdated notice of the sale of shares to Mr. Gordon as well as the likelihood that your course of action in oppressing Mrs. Crinnian's expectations and benefits of being a minority shareholder of Wakefield's will continue, Mrs. Crinnian objects to the sale of shares to Mr. Gordon.  Additionally, due to the expectation that this oppressive behavior will continue, Mrs. Crinnian further recognizes the futility in purchasing any additional shares of Wakefield's, as this would not change her minority status and would only serve to have her waste more of her personal resources on shares that you have systematically worked to devalue.

The steps that you, as majority shareholder, have taken to oppress Mrs. Crinnian include, but are not limited to: (1) Using your majority power to have your old friend John Gordon appointed to the board of directors in May 2012; (2) Using your majority power to ensure that Mrs. Crinnian's history of receiving a regular salary from the

---

[1] Mrs. Crinnian is the trustee and agent of the Susan Crinnian Trust and has identical goals and interests as the Susan Crinnian Trust.  Therefore, references to "Mrs. Crinnian" include her individual capacity, as well as her representative capacity as the trustee and agent of the Susan Crinnian Trust.

Bill Wakefield
February 26, 2014
Page 2 of 5

Corporation discontinued after 2012; (3) Using your majority power and control of the board of directors in May of 2013 to ensure that no dividend was issued in 2013. This further frustrated Mrs. Crinnian's expectations of compensation and value from her minority ownership in the Corporation; (4) Using your majority power in June of 2013 to pass a resolution that undervalued the per share stock price as the arbitrary value of 50% of book value; (5) Giving one of your shares to your wife, Deborah Ann Wakefield, in order to have an additional voting party to the shareholders meeting to support your majority positions in the November 2013 shareholder meeting; (6) Using your majority power to terminate Mrs. Crinnian from the board of directors, a position that she had held for at least the past ten (10) years; and (7) Using your majority power to allow your friend, Mr. Gordon, to purchase shares in the Corporation, further diluting Mrs. Crinnian's interest while eliminating Mrs. Crinnian's compensation by way of non-issuance of dividends and salary.

Your pattern of oppressive actions occurred in 2012 and 2013, following the death of your and Mrs. Crinnian father, Martin Wakefield, who founded the Corporation and ran it for the benefit of and with the ownership interests provided to his three children—you, Mrs. Crinnian, and Nannette Wakefield White. Your pattern of oppressive behavior coincides with your acquisition of further majority power under your inheritance through contested estate litigation as well as other actions, as discussed below. Although many of these actions were ostensibly taken pursuant to a vote of the board of directors or shareholders, these actions were led by you as majority shareholder with the intent of oppressing Mrs. Crinnian's ownership interest in the Corporation.

The May 19, 2012 shareholders meeting was the first shareholders meeting following the death of Martin L. Wakefield. You appeared at this shareholders meeting with 638 of your own shares. The Estate of Martin L. Wakefield held 378 shares at this meeting and was represented by you and Mrs. White as Personal Representatives of the estate. Mrs. Crinnian appeared on behalf of the Susan Crinnian Trust's 230 shares. Through your majority interest in the Corporation, you elected your friend Mr. Gordon as a director to the Corporation. Instead of voting for each director in turn, the slate of proposed directors was brought as a panel of five on a single vote. This meant that Mrs. Crinnian could not object to Mr. Gordon being elected as an officer individually, but instead was required to vote on the panel as a whole, which included the election of herself to the board of directors. The panel of directors, including the addition of Mr. Gordon, passed due to your majority interest in the Corporation.

Also on May 19, 2012 you used your majority interest in the Corporation to ensure that Mrs. Crinnian was no longer provided a salary by the Corporation. Mrs. Crinnian had historically been provided a salary by the Corporation for at least the past ten (10) years. Mrs. Crinnian's salary had been $30,000 paid in 26 equal installments the past several years. This regular salary was part of her reasonable expectation as an owner and shareholder. However, through your majority interest, you ensured that Mrs. Crinnian's salary was not provided for in 2013.

Bill Wakefield
February 26, 2014
Page 3 of 5

At the June 13, 2012 joint meeting of shareholders and directors, you appeared with 956 shares (following a significant increase in your shares due to the settlement of the Estate of Martin L. Wakefield), Mrs. White appeared with 404 shares, and Mrs. Crinnian appeared on behalf of the Susan Crinnian Trust with 230 Shares.  Through your majority interest as well as your control and influence over the board of directors, you ensured passage of the resolution approving a sale of Nannette Wakefield White's 404 shares of the Corporation.  This action was done in an attempt to create a devalued per share value of the Corporation at 50% of book value.

The purported valuation of the shares of the Corporation at 50% of book value is arbitrary and capricious for at least three reasons.  First, it is inconsistent with offers you have made to purchase and sell shares in the past.   These past offers include your 2003 offer to purchase or sell shares at 77% of book value ($11,816 per share) as well as your 2009 offer to purchase Mrs. Crinnian's 230 shares for $2,713,816 ($11,799.20 per share or 80% of the book value noted in your offer letter).  Second, although the agreement with Mrs. White states a purchase price of $8,033.00 per share (purportedly 50% of book value), this is not the true value given the other sums paid pursuant to the agreement with Mrs. White.  This agreement also agreed to pay Mrs. White a salary in the amount of $70,000 plus benefits for at least three years; a consultancy fee in the amount of $43,500 for not less than two years; and a sum of $500,000 for a 5-year non-compete restriction.  These additional sums bring the actual compensation paid for Mrs. White's sale of ownership interest in the Corporation to a much higher valuation than the $8,033 per share price suggests.  Third, using any percentage of book as the sole manner of calculating the share price of a closely held corporation such as the Corporation is an arbitrary way in which to value these shares.  Mrs. Crinnian voted "No" both in her capacity as shareholder as well as director to the resolution regarding the sale of Mrs. White's shares.

At the May 18, 2013 shareholder meeting, you appeared with 966 shares, Mrs. Crinnian appeared on behalf of the Susan Crinnian Trust with 230 shares, and 394 shares were held in treasury following the sale of Mrs. White's shares.  At the directors meeting, despite an increase in your yearly salary as well as a $10,000 bonus paid to you in addition to your increased yearly salary, you stated that no dividend would be awarded.  Therefore, contrary to the preceding years and history of Mrs. Crinnian receiving both a salary and a dividend from the Corporation, Mrs. Crinnian received neither of these expected forms of compensation.

At the November 1, 2013 shareholders meeting, your wife, Deborah Ann Wakefield, appeared as a shareholder after you gave her one of your shares. Therefore, you appeared with 965 shares; Mrs. Wakefield with 1 share; and Mrs. Crinnian appeared on behalf of the Susan Crinnian Trust with 230 shares.  By giving Mrs. Wakefield one of your shares, she was able to second and/or support any motion made by you.  She also was able to make motions that furthered your interest.  At this meeting, you used your majority interest in the Corporation to approve a sale of shares to Mr. Gordon at an undervalued per-share amount.  As discussed above, 50% of book value for a share price is arbitrary and undervalued.  Additionally, it appears evident from statements made in the November 1, 2013 shareholders meeting that Mr. Gordon's

Bill Wakefield
February 26, 2014
Page 4 of 5

employment is part of the compensation and value he is perceived as contributing in return for the issuance of shares. Despite Mrs. Crinnian's vote against the sale of shares to Mr. Gordon, you used your majority interest in the Corporation to pass the resolution in the shareholders meeting and to dilute further Mrs. Crinnian's minority interest in the Corporation.

Additionally, at the November 1, 2013 shareholders meeting, you used your majority interest in the Corporation to ensure that Mrs. Crinnian was not elected to the board of directors. Mrs. Crinnian has served on the board of directors for at least the past 10 years. However, through your majority interest in the Corporation and through your role in ushering the exit of Mrs. White from the Corporation, you were able to ensure that Mrs. Crinnian would no longer have any role in the management of the Corporation. This, along with the failure to issue her a dividend, the termination of her expected salary, and the dilution of her percentage interest in the Corporation were all done with the intention of oppressing her minority interest.

After Mrs. Crinnian was terminated from her role as a director of the Corporation, she was precluded from attending the November 1, 2013 or subsequent board meetings. The board of directors was instead you, your wife, Mr. Gordon, and Mr. Doster. The minutes of the November 1, 2013 board meeting state that the resolution relating to the proposed sale of stock by the Corporation to Mr. Gordon passed by a vote of three votes (you, your wife and Mr. Doster) to none with Mr. Gordon abstaining under the conflicts of interest rule. Additionally, the board of directors' minutes note that no motion was made in respect to a proposed dividend.

Due to your majority interest, Mrs. Crinnian has come to understand that Mr. Gordon previously purchased 125 shares in the Corporation at the undervalued share price of 50% of book. Mrs. Crinnian was sent a misdated letter regarding this purchase of shares. Mrs. Crinnian objects to the notice that she was provided regarding this share purchase.

Mrs. Crinnian received another misdated letter by way of email on January 24, 2014 regarding another proposed purchase of 125 shares by Mr. Gordon. The letter is dated November 10, 2013, but the email is dated January 24, 2014 creating confusion. It is unclear by the correspondence how many shares Mr. Gordon has purchased or when. Therefore, in addition to the reasons discussed above regarding the role and intent that the Gordon share purchases play in your attempt to oppress Mrs. Crinnian and dilute her interest in the Corporation, Mrs. Crinnian objects to any purchases of shares made by Mr. Gordon on the basis of improper notice.

Due to your actions, Mrs. Crinnian's reasonable expectations of her minority ownership in the Corporation have been severely frustrated and eliminated. To the extent you believe that the timeline and events discussed herein are factually inaccurate, please let us know by a detailed response including any documents that support any perceived factual inaccuracies.

Bill Wakefield
February 26, 2014
Page 5 of 5

Sincerely,

Stephen T. LaBriola
FOR THE FIRM

cc:     Tony Freeman, Esq.
        Megan C. Haley, Esq.
        Susan Crinnian


ELECTRONICALLY FILED
3/12/2014 3:25 PM
11-CV-2014-900142.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
ELI HENDERSON, CLERK

# Exhibit

# C

-------- Original Message --------

**Subject:** Re: Correspondence from counsel to Susan Crinnian, as Trustee of the Susan Crinnian Trust, to Bill Wakefield

**Date:** Wed, 26 Feb 2014 16:38:24 -0600

**From:** Eric Fryar <eric@fryarlawfirm.com>

**To:** Megan Haley <mhaley@fellab.com>, "Stephen T. LaBriola Esq." <slabriola@fellab.com>

**CC:** bwakefield@wakefields.com <bwakefield@wakefields.com>, Tony Freeman <Tony@fhlawaz.com>, Laura Bray <Laura@fhlawaz.com>, Susan Crinnian <susan.crinnian@cox.net>

Good letters. Note also that there is a derivative claim against Bill for selling stock to Gordon for less than its fair value. The damages would be the difference between the purchase price and the fair value, and we would be in a position to recover attorney's fees from the corporation if successful. I don't believe any further notice is necessary, as a specific demand would be futile.



FRYAR LAW FIRM P.C.

Eric Fryar
Fryar Law Firm, P.C.
912 Prairie, Suite 100
Houston, Texas 77002-3145
Direct:  281.715.6396 x101
www.ShareholderOppression.com

THE INFORMATION CONTAINED IN THIS E-MAIL OR THE ATTACHMENTS IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL TO WHOM THIS IS DIRECTED.  IF THE RECEIVER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, YOU ARE HEREBY NOTIFIED NOT TO READ THE COMMENTS OR ANY ATTACHMENTS AND THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, E-MAIL THE SENDER TO NOTIFY HIM/HER AND DELETE THE COMMUNICATION.

On Feb 26, 2014, at 4:14 PM, Megan Haley <mhaley@fellab.com> wrote:

Good afternoon,

Attached please find copies of two letters sent today from Stephen T. LaBriola, counsel to Susan Crinnian, Trustee of the Susan Crinnian Trust, to Mr. Bill Wakefield. A copy of these correspondence are also being sent to you via U.S. Mail.

Sincerely,


Megan C. Haley
mhaley@fellab.com
Fellows LaBriola LLP
Peachtree Center
Suite 2300 South Tower
225 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200
(404) 586-2047  direct
(404) 521-4987  facsimile

<02-26-14 Letter to Bill Wakefield.pdf><02-26-14 Letter of Settlement and Compromise.pdf>

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>11-CV-2014-900142.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF CALHOUN COUNTY
### WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL

SUSAN WAKEFIELD CRINNIAN, 1727 E. SELDON LANE, PHOENIX, AZ 85020

NOTICE TO _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY ANDREW P. CAMPBELL

WHOSE ADDRESS IS 420 20th Street North Suite 2000, BIRMINGHAM, AL 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☑ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☐ Service by certified mail of this summons is initiated upon the written request of _____
pursuant to the Alabama Rules of the Civil Procedure

Date   3/27/2014 12:52:08 PM      /s/ ELI HENDERSON

Clerk/Register

25 WEST 11TH STREEt

ANNISTON, AL 36201

☐ Certified Mail is hereby requested      _____
Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____   in   _____   County, Alabama on   _____
(Date)

_____           _____           _____
Date                                     Server's Signature                         Address of Server

_____           _____           _____
Type of Server                        Server's Printed Name                  _____
Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>11-CV-2014-900142.00 |
|---|---|---|

IN THE CIRCUIT COURT OF CALHOUN COUNTY

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL

TRUST SUSAN CRINNIAN, C/O SUSAN CRINNIAN 1727 E. SELDON LANE, PHOENIX, AZ 85020

NOTICE TO _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY ANDREW P. CAMPBELL

WHOSE ADDRESS IS 420 20th Street North Suite 2000, BIRMINGHAM, AL 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

[✓] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

[ ] Service by certified mail of this summons is initiated upon the written request of _____

pursuant to the Alabama Rules of the Civil Procedure

Date   3/27/2014 12:52:08 PM        /s/ ELI HENDERSON _____

Clerk/Register

25 WEST 11TH STREEt

ANNISTON, AL 36201

[ ] Certified Mail is hereby requested        _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

(Date)

_____        _____        _____
Date                                          Server's Signature                         Address of Server

_____        _____        _____
Type of Server                             Server's Printed Name                  

_____
Phone Number of Server

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SUSAN WAKEFIELD CRINNIAN

1727 E. SELDON LANE

PHOENIX, AZ 85020

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)

C.T. CRINNIAN

C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

FILED

MAR 2 8 2014

ELI HENDERSON, CLERK

3. Service Type
☑ Certified Mail®
☐ Registered       ☑ Return Receipt for Merchandise
☐ Insured Mail    ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)     ☑ Yes

2. Article Number
(Transfer from service label)

7013 2250 0001 3297 7348

PS Form 3811, July 2013          Domestic Return Receipt          CV 2014-900142



**AlaFile E-Notice**

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To:   CAMPBELL ANDREW PHILLIP
     acampbell@lspclaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was served on 3/28/2014

D002 CRINNIAN SUSAN WAKEFIELD

CERTIFIED MAIL

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov



**AlaFile E-Notice**

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To:  WADSWORTH STEPHEN DOUGLAS
     Swadsworth@lspclaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was served on 3/28/2014

D002 CRINNIAN SUSAN WAKEFIELD

CERTIFIED MAIL

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov

**SENDER: *COMPLETE THIS SECTION***

- Complete Items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SUSAN CRINNIAN TRUST

C/O SUSAN CRINNIAN

1727 E. SELDON LANE

PHOENIX, AZ 85020

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. T. CRINNIAN

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

FILED

MAR 3 1 2014

ELI HENDERSON, CLERK

3. Service Type
☑ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7013 2250 0001 3297 7324

PS Form 3811, July 2013      Domestic Return Receipt   CV 2014-900142



AlaFile E-Notice

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To: CAMPBELL ANDREW PHILLIP
acampbell@lspclaw.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was served on 3/31/2014

D003 TRUST SUSAN CRINNIAN

CERTIFIED MAIL

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov



AlaFile E-Notice

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To: WADSWORTH STEPHEN DOUGLAS
Swadsworth@lspclaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was served on 3/31/2014

D003 TRUST SUSAN CRINNIAN
CERTIFIED MAIL

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov



AlaFile E-Notice

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To:  CAMPBELL ANDREW PHILLIP
     acampbell@lspclaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was served on 3/19/2014

D001 WAKEFIELD'S INC.

CERTIFIED MAIL

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov



**AlaFile E-Notice**

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To:  WADSWORTH STEPHEN DOUGLAS
     Swadsworth@lspclaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was served on 3/19/2014

D001 WAKEFIELD'S INC.
CERTIFIED MAIL

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov

**SENDER: *COMPLETE THIS SECTION***

- Complete Items 1, 2, and 3. Also complete item 4 If Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front If space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Deborah Boston_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

_Deborah Boston_   _3/19/14_

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

WAKEFIELD'S INC.

WILLIAM WAKEFIELD

1212 QUINTARD AVENUE

ANNISTON, AL 36201

3. Service Type
   ☑ Certified Mail®    ☐ Priority Mail Express™
   ☐ Registered    ☑ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

   7013 2250 0001 3297 7331

PS Form 3811, July 2013    Domestic Return Receipt    CV2014-900142



AlaFile E-Notice

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To: CRINNIAN SUSAN WAKEFIELD (PRO SE)
1727 E. SELDON LANE
PHOENIX, AZ 85020-0000

# NOTICE OF CASE SETTING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was SET FOR HEARING

**D001 WAKEFIELD'S INC.**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: WAKEFIELD DEBORAH ANN]

Hearing Date:    04/30/2014
Hearing Time:    02:00:00 PM
Location:        310

Notice Date:     4/10/2014 10:42:21 AM

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov



AlaFile E-Notice

11-CV-2014-900142.00

Judge: BRIAN P HOWELL

To: TRUST SUSAN CRINNIAN (PRO SE)
C/O SUSAN CRINNIAN
1727 E. SELDON LANE
PHOENIX, AZ 85020-0000

# NOTICE OF CASE SETTING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

WILLIAM M. WAKEFIELD V. WAKEFIELD'S INC. ET AL
11-CV-2014-900142.00

The following matter was SET FOR HEARING

**D001 WAKEFIELD'S INC.**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: WAKEFIELD DEBORAH ANN]

Hearing Date:    04/30/2014
Hearing Time:    02:00:00 PM
Location:        310

Notice Date:     4/10/2014 10:42:21 AM

ELI HENDERSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREEt
ANNISTON, AL 36201

256-231-1750
eli.henderson@alacourt.gov